IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:15-cv-1063

| | | |
|---|---|---|
| ACTION NC, DEMOCRACY NORTH CAROLINA, NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE, SHERRY DENISE HOLVERSON, ISABEL NAJERA, and ALEXANDRIA MARIE LANE, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | ANSWER BY DEFENDANT STRACH |
| vs. | ) ) ) | |
| KIM WESTBROOK STRACH, *in her official capacity as Executive Director of the North Carolina State Board of Elections*; RICK BRAJER, *in his official capacity as Secretary of the North Carolina Department of Health and Human Services*; KELLY THOMAS, *in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles*, and NICK TENNYSON, *in his official capacity as Secretary of the North Carolina Department of Transportation*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

NOW COMES DEFENDANT, Kim Westbrook Strach, in her official capacity as Executive Director of the North Carolina State Board of Elections and answering the Complaint, admits, denies, and alleges as follows:

1.     In response to the allegations set forth in Paragraph 1 of Complaint, Defendant admits that Plaintiffs characterize their lawsuit as one raising issues under the

National Voter Registration Act of 1993, 52 U.S.C. §2501 ("NVRA"). Except as admitted, the remaining allegations set forth in Paragraph 1 are legal conclusions and the same are hereby denied.

2.      In response to the allegations of Paragraph 2, it is admitted that the materials quoted in Paragraph 2 are provisions of the NVRA found at 52 U.S.C. §20501(a)(1)-(2) and (b)(1). Except as admitted, the remaining allegations set forth in Paragraph 2 are legal conclusions and the same are hereby denied.

3.      The allegations in Paragraph 3 are in the nature of legal conclusions and/or argument and the same are hereby denied.

4.      The allegations in Paragraph 4 are legal conclusions and the same are hereby denied.

5.      The allegations in Paragraph 5 are legal conclusions and the same are hereby denied.

6.      The allegations in Paragraph 6 are legal conclusions and the same are hereby denied.

7.      In response to the allegations in Paragraph 7, it is admitted that the North Carolina State Board of Elections ("SBE") maintains voter registration data. Except as admitted, the allegations in Paragraph 7 are legal conclusions are the same are hereby denied.

8.      The allegations in Paragraph 8 are legal conclusions and the same are hereby denied.

2

9.     The allegations in Paragraph 9 are legal conclusions and the same are hereby denied.

10.    The allegations in Paragraph 10 are legal conclusions and the same are hereby denied.

11.    The allegations in Paragraph 11 are legal conclusions, and the same are hereby denied.

12.    The allegations in Paragraph 12 are legal conclusions and the same are denied.

13.    In response to the allegations in Paragraph 13, Defendant admits that State law N.C.G.S. §163-182.2(a)(4), governs the process by which a provisional ballot application is accepted and the ballot counted.  Defendant further admits that county boards of elections may verify the registration of a voter as part of their consideration under N.C.G.S.  §163-182.2(a)(4). Except as admitted, the allegations of Paragraph 13 are legal conclusions and/or argument, and the same are hereby denied.

14.    The allegations of Paragraph 14 are legal conclusions and the same are hereby denied.

15.    The allegations of Paragraph 15 are legal conclusions and the same are hereby denied.

16.    In response to the allegations of Paragraph 16, it is admitted that Defendant received a letter, dated May 8, 2015, copied to the former secretary of NCDHHS and written on behalf of Plaintiffs Action NC, Democracy of North Carolina, and A. Philip

3

Randolph Institute. It is further admitted that Defendant received a letter, dated June 1, 2015, copied to officials with DMV and the North Carolina Department of Transportation and written on behalf of Plaintiffs Action NC, Democracy of North Carolina, A. Philip Randolph Institute, Holverson, Najera and Lane. A copy the May 8, 2015 letter is appended to this Answer as Exhibit 1. Except as admitted, the allegations of Paragraph 16 are legal conclusions and the same are hereby denied.

17. In response to the allegations of Paragraph 17, it is admitted that Plaintiffs have brought an action for declaratory and injunctive relief; the remainder of the allegations in Paragraph 17 are legal conclusions are the same are hereby denied.

JURISDICTION AND VENUE

18. It is admitted that Plaintiffs have alleged standing pursuant to Section 11(b) of the NVRA, 52 U.S.C. §20510(b). Except as admitted, the allegations of Paragraph 18 are denied.

19. The allegations set forth in Paragraph 19 are legal conclusions and the same are hereby denied.

20. The allegations set forth in Paragraph 20 are legal conclusions and the same are hereby denied.

21. The allegations set forth in Paragraph 21 are legal conclusions and the same are hereby denied.

4

22.     In response to the allegations in Paragraph 22, it is admitted upon information and belief that Action NC, Inc., is a nonprofit corporation, whose principal office is in Charlotte, North Carolina.   Except as admitted, Defendant is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 22, and, accordingly, the same are denied upon present information and belief.

23.     Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 23 and therefore denies the same; Defendant specifically denies the allegation that the State Defendants have not "complied with their obligations under the NVRA."

24.     The allegations of Paragraph 24 are legal conclusions and the same are hereby denied.

25.     In response to the allegations in Paragraph 25, it is admitted, upon information and belief, that Democracy North Carolina is a nonprofit corporation whose principal place of business is in Durham, North Carolina.  Except as admitted, Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 25, and the same are therefore denied.

26.     In response to the allegations of Paragraph 26, Defendant specifically denies noncompliance with the NVRA.   Defendant otherwise is without sufficient

5

information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 26 and the same are therefore denied.

27.     Defendant is without information and knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 27 regarding Action NC's efforts or alternative priorities.  Accordingly, the allegations in Paragraph 27 are denied.

28.     In response to the allegations in Paragraph 28, it is admitted, upon information and belief, that North Carolina A. Philip Randolph Institute, Inc. ("APRI") is state chapter of the A. Philip Randolph Institute, that APRI is a charitable organization with its headquarters in Raleigh, North Carolina, and offices in Durham and Greensboro, North Carolina.  Except as admitted, Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the remaining allegations in Paragraph 28, and the same are therefore denied.

29.     In response to the allegations in Paragraph 29, Defendant specifically denies the allegation of noncompliance with the NVRA.  Defendant otherwise is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 29 and the same are denied upon present information and belief.

30.     The allegations of Paragraph 30 are legal conclusions and are hereby denied.

31.     The allegations of Paragraph 31 are legal conclusions and are hereby denied.

32.     In response to the allegations in Paragraph 32, it is admitted that Plaintiff Holverson voted in Cumberland County on May 6, 2014 (although she alleges that she moved in April 2014 from Cumberland County to Harnett County). It is admitted that Plaintiff Holverson submitted a provisional ballot application on October 31, 2014, and the provisional ballot application was not approved because she was not registered to vote in the county.  Except as admitted, Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 32 and therefore denies the same upon present information and belief.

33.     In response to the allegations in Paragraph 33, it is admitted that Ms. Holverson's November 2014 provisional ballot application was not approved because she was not registered to vote in the county.  Except as admitted, the allegations in Paragraph 33 are denied.

34.     In response to the allegations in Paragraph 34, it is admitted that Plaintiff Holverson is registered to vote in Cumberland County and that confirmation of voter registration is received by the voter through the mail.  Except as admitted, Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 34 and therefore denies the same.

35.     In response to the allegations in Paragraph 35, it is admitted that Plaintiff Najera submitted a provisional ballot application on October 29, 2014, because she was not registered to vote in the county. Except as admitted, Defendant is without sufficient

information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 35 and therefore denies the same.

36. In response to the allegations in Paragraph 36, it is admitted that Ms. Najera's November 2014 provisional ballot was not approved because she was not registered. Except as admitted, the allegations of Paragraph 36 are denied.

37. In response to the allegations in Paragraph 37, it is admitted that Plaintiff Lane submitted a provisional ballot application on October 27, 2014, and that this provisional ballot application was not approved because she was not registered in the county. It is further admitted upon information and belief that Plaintiff Lane registered to vote in Virginia in 2012. Except as admitted, Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 37 and therefore denies the same.

38. In response to the allegations in Paragraph 38, it is admitted that Ms. Lane's November 2014 provisional ballot application was not approved because she was not registered in the county. Except as admitted, the allegations of Paragraph 38 are denied.

39. The allegations in Paragraph 39 are legal conclusions and the same are hereby denied.

40. The allegations in Paragraph 40 are legal conclusions and the same are hereby denied.

41.     In response to the allegations in Paragraph 41, it is admitted that Kim Westbrook Strach is the Executive Director of the North Carolina State Board of Elections and that she is the Chief State Election Official pursuant to N.C.G.S. §163-82.2, "for the purposes of P.L. 103-31, The National Voter Registration Act of 1993, …[and] is responsible for the coordination of State responsibilities under [the Act]." Except as admitted, the allegations in Paragraph 41 are legal conclusions and the same are hereby denied.

42.     In response to the allegations in Paragraph 42, it is admitted that Rick Brajer is the Secretary of the North Carolina Department of Health and Human Services. Except as admitted, the allegations in Paragraph 42 are legal conclusions, which are denied.

43.     In response to the allegations in Paragraph 43, it is admitted that Kelly Thomas is the North Carolina Commissioner of Motor Vehicles.  Except as admitted, the allegations in Paragraph 43 are legal conclusions, which are denied.

44.     In response to the allegations in Paragraph 44, it is admitted that Nick Tennyson is the Secretary of the North Carolina Department of Transportation.  Except as admitted, the allegations in Paragraph 44 are legal conclusions, which are denied.

## FACTUAL ALLEGATIONS
### The Failure of North Carolina Public Assistance Agencies to Meet their Voter Registration Obligations Under Section 7 of the NVRA and State Law.

45.     The allegations of Paragraph 45 are denied.  Additionally, Defendant denies the conclusory allegation in the above heading to the extent that said heading may be interpreted, or reasonably inferred, as being an allegation and requiring a response.

46.     The allegations of Paragraph 46 are denied.

47.     The allegations in Paragraph 47 are legal conclusions and the same are denied.

48.     The allegations of Paragraph 48 are legal conclusions and the same are denied.

49.     The allegations of Paragraph 48 are legal conclusions and the same are denied.

50.     The allegations of Paragraph 50 are legal conclusions and the same are denied.

51.     In response to the allegations of Paragraph 51, it is admitted that the material quoted therein is from 52 U.S.C. §§ 20506(d)(1) and 20506(d)(2).  Except as admitted, the allegations of Paragraph 51 are legal conclusions and the same are  denied.

52.     The allegations of Paragraph 52 are legal conclusions and the same are denied.

10

53.     The Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in  Paragraph 53 and/or these allegations are legal conclusions.  Accordingly, the same are denied.

54.     The allegations of Paragraph 54 are denied.

55.     The allegations in Paragraph 55 are legal conclusions and are denied.

56.     The allegations in Paragraph 56 are legal conclusions and are denied.

57.     The allegations in Paragraph 57 are legal conclusions and are denied.

58.     The allegations in Paragraph 58 are legal conclusions and are denied.

59.     In response to the allegations in Paragraph 59, Defendant specifically denies Plaintiffs' legal conclusion of "widespread violations of Section 7 of the NVRA," and is otherwise without sufficient information or knowledge to form a belief regarding the truth or falsity of the remaining allegations set forth in Paragraph 59, and therefore these allegations are denied.

60.     Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 60, and therefore these allegations are denied.

61.     Defendant is without sufficient information to or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 61, and therefore these allegations are denied.

62. Defendant is without sufficient information to or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 62, and therefore these allegations are denied.

63. Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth in Paragraph 63, and therefore these allegations are denied.

64. The allegations in Paragraph 64 are legal conclusions and the same are therefore denied.

65. The allegations in Paragraph 65 are denied.

66. The allegations in Paragraph 66 are denied.

67. In response to the allegations of Paragraph 67, it is admitted that "Demos, Expanding Voter Registration for Low-Income Citizens: How North Carolina is Realizing the Promise of the National Voter Registration Act, April 2008," is an article available at the website address provided in Paragraph 67 and that the article acknowledges on page 5 that the State Board of Election's plan is a "model" plan. Except as admitted, the allegations of Paragraph 67 are denied.

68. The allegations of Paragraph 68 are legal conclusions and the same are denied.

The Failure of North Carolina Motor Vehicle Offices to Meet Their Voter
Registration Obligations Under Section 5 of the NVRA and State Law.

69.    The allegations of Paragraph 69 are denied.  Additionally, Defendant denies
the conclusory allegation in the above heading to the extent that said heading may be
interpreted, or reasonably inferred, as being an allegation and requiring a response.

70.    The allegations of Paragraph 70 are legal conclusions and the same are
denied.

71.    The allegations of Paragraph 71 are legal conclusions and the same are
denied.

72.    The allegations of Paragraph 72 are legal conclusions and the same are
denied.

73.    The allegations of Paragraph 73 are legal conclusions and the same are
denied.

74.    The allegations of Paragraph 74 are legal conclusions and the same are
denied.

75.    The allegations of Paragraph 75 are legal conclusions and the same are
denied.

76.    In response to the allegations of Paragraph 76, the legal conclusion that the
North Carolina DMV systematically fails to meet its voter registration responsibilities is
denied.  Defendant is otherwise without sufficient information to or knowledge to form a
belief regarding the truth or falsity of the allegations set forth in Paragraph 76, and
therefore denies the same.

13

77.    In response to the allegations in Paragraphs 77 (a), (b), (c), and (d), Defendant denies the legal conclusions of noncompliance therein and Defendant is without sufficient information or knowledge to form a belief regarding the truth or falsity of the allegations set forth therein, and therefore denies the same.

78.    The allegations of Paragraph 78 are denied.

79.    The allegations of Paragraph 79 are denied.

80.    The allegations of Paragraph 80 are legal conclusions and the same are hereby denied.

81.    The allegations of Paragraph 81 are denied.

82.    The allegations set forth in Paragraph 82 focus on the thoughts and feelings of unknown and unnamed individuals, which are materially irrelevant and of which Defendant has no independent knowledge, and contain legal conclusions; accordingly, the allegations of Paragraph 82 are denied.

83.    The allegations in Paragraph 83 include immaterial allegations of persons' states of mind, of which Defendant has no independent knowledge, and contain legal conclusions; accordingly, the allegations in Paragraph 83 are denied.

84.    The allegations of Paragraph 84 are legal conclusions and the same are denied.

85.    In response to the allegations in Paragraph 85, it is admitted that DMV has a web-based portal, which allows eligible individuals to transact business related to DMV, and that this business may include change of address, driver's license renewal, and

14

identification card renewal. Except as admitted, the allegations in Paragraph 85 are denied.

86.     The allegations of Paragraph 86 are denied.

87.     The allegations of Paragraph 87 are denied.

88.     The allegations of Paragraph 88 are denied.

89.     In response to the allegations of Paragraph 89, it is admitted that DMV provides on its website a link to the State Board of Election's website, which in turn provides a voter registration form. Except as admitted, the allegations of Paragraph 89 are denied.

90.     The allegations of Paragraph 90 are denied.

91.     In response to the allegations of Paragraph 91, it is admitted that Plaintiffs named in Paragraph 91, through their counsel, sent a letter by mail and email to Defendant Strach, a copy of which is appended hereto as Exhibit 1. It is specifically denied that the May 8, 2015, letter contained sufficient detail to notify Defendant of the alleged deficiencies and to enable Defendant to investigate matters and take actions to obtain compliance, assuming non-compliance was substantiated. It is also specifically denied that the May 8, 2015 letter is sufficient to support a private right of action and to overcome the Eleventh Amendment immunity of Defendant. Except as admitted or specifically denied, the allegations of Paragraph 91 are denied.

92.     In response to the allegations of Paragraph 92, it is admitted that the May 8, 2015, letter purported to provide a notice of intent to sue for violations of Section 7 of the

15

NVRA unless the violations were corrected within a 90-day notice period, but it is specifically denied that the letter is sufficient to support a private right of action and to overcome the Eleventh Amendment immunity of Defendant, and any allegations of noncompliance and/or violations set forth therein are denied. Except as admitted or specifically denied, the allegations of Paragraph 92 are denied.

93. In response to the allegations of Paragraph 93, it is admitted that the named Plaintiffs sent a letter dated June 1, 2015, and that Defendant Strach received the letter, but the noncompliance or violations alleged therein are denied. Except as admitted or denied, the allegations of Paragraph 93 are denied.

94. In response to the allegations in Paragraph 94, it is admitted that the June 1, 2015, letter asserted violations of the NVRA and stated an intent to pursue litigation if the violations were not remedied within a 90-day period, but the allegations therein are denied. Except as admitted or denied, the allegations of Paragraph 94 are denied.

95. The allegations of Paragraph 95 are denied.

FIRST CAUSE OF ACTION
Violation of Section 7 of the National Voter Registration Act of 1993
(against the Section 7 Defendants)

96. In response to the allegations in Paragraph 96, Defendant relies on answers to all paragraphs of this Complaint and incorporates those responses herein in preceding paragraphs 1-95.

97. The allegations of Paragraph 97 are denied.

16

98.     In response to the allegations in Paragraph 98, it is admitted that many North Carolinians receive public assistance.   Except as admitted, the allegations of Paragraph 98 are denied.

99.     The allegations of Paragraph 99 are denied.

100.    The allegations of Paragraph 100 are denied.

SECOND CAUSE OF ACTION
Violation of Section 5 of the National Voter Registration Act of 1993
(against the Section 5 Defendants)

101.    In response to the allegation in Paragraph 101, Defendant relies on responses to the Paragraphs of this Complaint and incorporates the same herein.

102.    The allegations of Paragraph 102 are denied.

103.    The allegations of Paragraph 103 are denied.

104.    The allegations of Paragraph 104 are denied.

105.    The allegations of Paragraph 105 are denied.

FIRST AFFIRMATIVE DEFENSE

106.    The Individual Plaintiffs lack standing to pursue their claims and this action should be dismissed pursuant to Rule 12(b)(1) of the Federal Civil Rules of Procedure.

SECOND AFFIRMATIVE DEFENSE

107.    The Plaintiff Organizations lack standing to pursue their claims and this action should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

THIRD AFFIRMATIVE DEFENSE

108.   Plaintiffs fail to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and this action should be dismissed.

FOURTH AFFIRMATIVE DEFENSE

109.   Individual Plaintiffs' claims against Defendant Strach are barred by Eleventh Amendment immunity and must be dismissed in accordance with Rule 12(b)(1), and/or Rule 12(b)(2) of the Federal Rules of Civil Procedure because these Plaintiffs are registered to vote and there is no ongoing, redressable violation of federal law.

FIFTH AFFIRMATIVE DEFENSE

110.   Plaintiff Organizations' Section 7 claims against Defendant Strach are barred by Eleventh Amendment immunity and must be dismissed pursuant to Rule 12(b)(1) and/or Rule12(b)(2) or 12(b)(6) of the Federal Rules of Civil Procedure because the May 8, 2015 letter (appended hereto as Exhibit 1) was insufficient to support a private right of action and to waive immunity of a state official under the *Ex parte Young* doctrine, codified within the NVRA.

SIXTH AFFIRMATIVE DEFENSE

111.   Plaintiffs fail to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to their allegations concerning DMV's website portal, the online and remote transactions at public assistance agencies, and third-party contractors, and these claims should be dismissed.

18

## SEVENTH AFFIRMATIVE DEFENSE

112.   Plaintiff Organizations fail to state a Section 7 claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the NVRA does not require a specified percentage of voter registration applications for compliance and the data in existence prior to the filing of this Complaint does not support Plaintiffs' conclusions of noncompliance.

## EIGHTH AFFIRMATIVE DEFENSE

113.   To the extent that Plaintiffs' recitation of state law and the heading in the Complaint preceding Paragraph 69 stating "[t]he Failure of North Carolina Motor Vehicle Offices to Meet Their Voter Registration Obligations Under Section 5 of the NVRA and State Law," is a claim for, or may be construed as a claim for violations of state law, the Eleventh Amendment bars state law claims and such claims must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## NINTH AFFIRMATIVE DEFENSE

114.   Plaintiffs' claims are moot.

## TENTH AFFIRMATIVE DEFENSE

115.   The NVRA does not require state officers to subject themselves to court-approved plans like the ones sought by plaintiffs.

WHEREFORE, Defendant respectfully requests that this Court:

1)      dismiss this Complaint with prejudice and enter judgment in favor of Defendant;

19

3)     deny all relief requested by Plaintiffs in their Complaint and in their Prayer

for Relief, inclusive of Prayer for Relief subparagraphs (i) through (xi);

4)     allow Defendant herein to recover costs and attorneys' fees as allowed by

law; and

5)     grant such other and further relief as the Court may deem just and proper.

This the 17th day of March, 2016.

ROY COOPER
ATTORNEY GENERAL

/s/ Alexander McC. Peters
Alexander McC. Peters
Senior Deputy Attorney General
State Bar No. 13654
Email: apeters@ncdoj.gov

/s/ Lauren M. Clemmons
Lauren M. Clemmons
Special Deputy Attorney General
State Bar No. 15987
Email: lclemmons@ncdoj.gov

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 761-6900

20

## CERTIFICATE OF SERVICE

I hereby certify that on 17 March 2015, I electronically filed the foregoing

ANSWER BY DEFENDANT STRACH with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to:

Anita S. Earls
Allison J. Riggs
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham NC  27707

Matthew M. D'Amore
Joshua R. Stein
Morrison & Foerster LLP
250 West 55th Street
New York NY  10019

Steven M. Kaufmann
Kirk A. Sigmon
Morrison & Foerster LLP
2000 Pennsylvania Ave., NW
Suite 6000
Washington DC  20006

Stuart Naifeh
Naila Awan
Dēmos
220 Fifth Ave., 2nd Flr.
New York NY  10001

Dorian L. Spence
Robert Kengle
Ezra Rosenberg
Lawyers' Committee for Civil Rights
Under Law
1401 New York, Ave., NW
Suite 400
Washington DC  20005

Catherine M. Flanagan
Sarah Brannon
Project Vote
805 15th Street, NW
Suite 250
Washington DC  20005

This the 17th day of March, 2016.


/s/ Lauren M. Clemmons
Lauren M. Clemmons
Special Deputy Attorney General

21

EXHIBIT 1

   

May 8, 2015

*Via certified mail and email*

Kim Westbrook Strach
Executive Director, North Carolina State Board of Elections
PO Box 27255
Raleigh, NC 27611-7255
kim.strach@ncsbe.gov

      RE:    *Compliance with Section 7 of the National Voter Registration Act*

Dear Ms. Strach:

We write on behalf of Action NC, Democracy North Carolina, the A. Philip Randolph Institute, persons eligible to register to vote that these organizations represent, and others similarly situated to notify you that the State of North Carolina is not in compliance with Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20506, which requires States, including North Carolina, to provide individuals with a meaningful opportunity to register to vote when interacting with public assistance agencies.

In the past, North Carolina has been responsive when notified of the State's failure to comply with provisions of the NVRA. Less than 10 years ago, Dēmos, Project Vote, and Lawyers' Committee for Civil Rights Under Law approached the North Carolina State Board of Elections ("NCSBE") after observing that State practices were failing to meet the standards set in Section 7 of the NVRA. We were able to work successfully with the NCSBE to, within two months, develop a comprehensive compliance plan for North Carolina. This plan succeeded in increasing the number of individuals registering through public assistance agencies six-fold, and we held it out as a model to be followed by other states.[1]

In recent years, North Carolina's compliance with the NVRA has, once again, begun to decline. We hope that we may reestablish our strong working relationship with the NCSBE to help ensure that North Carolina's public assistance agencies are meeting their Section 7 obligations. And, we urge you, as the State's chief election

---

[1] *See, e.g.*, Dēmos, Expanding Voter Registration for Low-Income Citizens: How North Carolina is Realizing the Promise of the National Voter Registration Act, April 2008, *available at* http://www.demos.org/sites/default/files/publications/NVRA_North_Carolina_Demos.pdf.

official, to take immediate steps, in conjunction with the Department of Health and Human Services ("DHHS"), to bring the State into compliance with federal law.

## I. The Requirements of the National Voter Registration Act of 1993

Section 7 of the NVRA requires North Carolina to "designate as voter registration agencies . . . all offices in the State that provide public assistance." *See* 52 U.S.C. § 20506(a)(2)(A). "Public assistance" programs that must provide voter-registration services under Section 7 include, at a minimum, the Supplemental Nutrition Assistance Program ("SNAP"), Temporary Assistance for Needy Families ("TANF"), the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"), the Medicaid program, and the Children's Health Insurance Program ("CHIP"). *See, e.g.*, U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q13, http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php (last visited May 8, 2015). In North Carolina, these programs are administered by DHHS.

The NVRA mandates that public assistance offices provide voter registration opportunities whenever an individual is engaging in a "covered transaction" (an application, renewal, recertification, or change of address transaction). In order to fulfill their voter registration obligations, each public assistance office must (i) distribute voter registration application forms; (ii) assist applicants in completing the voter registration forms, unless such assistance is refused by the applicant; and (iii) accept completed voter registration application forms and forward them to the appropriate election official. *See* 52 U.S.C. § 20506(a)(4)(A). Moreover, each office must (i) inquire of the applicant, in writing, whether he or she would like to register to vote or change his or her voter registration address;[2] (ii) distribute a voter registration application form with each covered transaction, unless the individual applicant or client affirmatively opts out of voter registration by declining in writing to register to vote;[3] (iii) inform the applicant, in writing, that the decision to register or decline to register to vote will not affect the amount of public assistance provided by the agency;[4] and (iv) provide assistance in completing the voter registration forms to the same degree the agency provides assistance in completing its own forms. *See* 52 U.S.C. § 20506(a)(6).

These voter registration services must be provided by public agencies, regardless of whether a covered transaction takes place in person at an agency office or remotely

---

[2] The NVRA provides specific language that must be used to make this inquiry, known as the Voter Preference Question. The NVRA mandates that individuals engaging in covered transactions with public assistance offices must be provided a form that asks: "If you are not registered to vote where you live now, would you like to apply to register to vote here today?" *See* 52 U.S.C. § 20506(a)(6)(B)(i).

[3] *See Valdez v. Squier*, 676 F.3d 935, 945-46 (10th Cir. 2012) (noting that, during covered transactions, public assistance agencies must provide a voter registration form to any client who does not decline to register to vote in writing).

[4] This statement is one of several statutory disclosures required by Section 7. *See* 52 U.S.C. § 20506(a)(6)(B)(iv) and (v).

via phone, mail, email, or internet. *Georgia Conf. of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1331 (N.D. Ga. 2012) (voter registration must be provided during remote transactions); *see also* U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q24. Moreover, it is worth emphasizing that each client engaging in a covered transaction must receive a voter registration application *unless* he or she declines in writing. *See Valdez v. Squier*, 676 F.3d 935, 945-46 (10th Cir. 2012) (The NVRA "must be interpreted as requiring a designated voter registration agency to provide an applicant with a voter registration form unless the applicant declines, in written form, to register to vote. . . . Thus, in sum, [the NVRA] requires an applicant to affirmatively, by way of writing, 'opt out' of receiving a voter registration form."). Thus, someone who fails to provide a response to the mandatory voter registration question must receive a voter registration application.

As discussed below, North Carolina's public assistance agencies are failing to fulfill their NVRA obligations.

## II.     North Carolina's Non-Compliance with the NVRA

North Carolina's violations of Section 7 of the NVRA are demonstrated by multiple sources of information, including data reported by the NCSBE as well as the state Department of Health and Human Services, DHHS program forms, interviews conducted at North Carolina Department of Social Services ("DSS") and Public Health ("WIC") offices (collectively "DHHS offices"); and review of third-party contractor processes. Together, the sources of information reveal that DHHS is systematically failing to provide the voter registration services mandated by Section 7 the NVRA.

As described in greater detail below, the results of our investigation indicate that DHHS is engaged in continuing violations of the NVRA. At a minimum, DHHS is violating its obligation to provide the voter preference form and to distribute voter registration applications to clients engaged in covered transactions occurring in person or through remote means. Because it is not providing applications, DHHS is obviously not offering the required assistance in completing them. We expect that further review, conducted in the context of litigation or otherwise, will reveal additional continuing NVRA violations.

### a.  Voter Registration Data

Data from the NCSBE shows that—after many years of stability punctuated by spikes around presidential elections—the number of voter registration applications originating from North Carolina public assistance agencies has decreased dramatically in the last two reported years.

| Year | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|
| **Number of Applications Submitted by Public Assistance Agencies** | 33,101 | 42,672 | 33,705 | 36,824 | 42,988 | 41,162 | 18,758 | 13,340 |

*\* Information in this table is from the North Carolina State Board of Elections, available at ftp://alt.ncsbe.gov/NVRA/NVRA%20Reports/PublicAssistanceActivity2008-14.xlsx; ftp://alt.ncsbe.gov/NVRA/NVRA Reports/.[5]*

From 2011, the year of peak registrations, to 2014, the number of applications dropped by nearly 69%, from 42,988 to 13,340.

These reductions cannot be explained by a corresponding decline in the caseload at DHHS. For example, the number of applications for public assistance services submitted to DHHS dropped by approximately 22.5 percent between 2011 and 2013, while the decline in DHHS-generated voter registration applications fell by *more than 56 percent* over the same period. Thus, while DHHS's caseload has diminished, the decrease represents only a fraction of the reduction in voter registration applications.

### b. Field Investigations at DHHS Offices

During October 2014, field investigators visited 19 DHHS offices in 11 North Carolina counties. Field observations confirm that frontline staff at DHHS offices consistently fail to distribute voter registration applications to public assistance clients, as required by the NVRA.

While workers at some public assistance offices described NVRA-compliant procedures, their factual assertions were not supported by interviews conducted with clients exiting the offices. For example, interviews conducted with 196 DHHS clients – who reported that they were eligible to vote and had engaged in a covered transaction – revealed:

- Three-quarters of interviewees received no offer of voter registration of any kind. Specifically, 146 clients (74.5%) did not see a voter registration question on their forms, were not verbally asked whether they would like to receive a voter registration application, and did not receive a voter registration application.

- At offices that claimed to *distribute voter registration applications to everyone*, 74% of interviewees stated that they had neither (i) received an application,

---

[5] The most recent Election Assistance Commission ("EAC") NVRA Report was released in 2013 and addressed data is from 2011-2012. We expect the 2013 and 2014 data to be reflected in the 2013-2014 EAC NVRA Report.

Case 1:15-cv-01063-LCB-JEP   Document 27   Filed 03/17/16   Page 25 of 28

nor (ii) declined the opportunity to register to vote, either verbally or in writing.

- At the four offices that claimed to *ask each client whether s/he would like a voter registration application*, 92% of the interviewees stated that they had not seen or responded to a voter registration question on their forms, and 93% of interviewees stated that no one had verbally offered them a registration application.

While it is possible that a voter registration question appears on at least some DHHS forms used during covered transactions, individuals who did not see any voter registration question would have failed to respond to any "missed" question. As explained above, each such individual should have received a voter registration application, as the NVRA mandates that each client engaging in a covered transaction must receive a voter registration application *unless* he or she declines in writing. The high number of individuals who reported they did not see a voter registration question, did not respond to a voter registration question, *and* did not receive a voter registration application demonstrates that DHHS is routinely disregarding the provisions set forth in the NVRA.

Significantly, six of the 19 offices (31.6%) lacked even the materials, procedures, and/or infrastructure to comply with the NVRA:

- Four offices did not have voter registration applications onsite;

- One office failed to collect any voter registration applications; and

- One office provided voter registration applications to clients only upon request.[6]

---

[6] The Medicaid application provided on DHHS' website provides an additional indicia of noncompliance. The application does not contain the Voter Preference Question and checkboxes mandated by Section 7. *See* 52 U.S.C. § 20506(a)(6)(B)(i) and (iii). Neither does it contain the required disclosures. *See* 52 U.S.C. § 20506(a)(6)(B). Additionally, it instructs applicants who wish to register to vote to complete the voter registration form found at the Board of Elections website. *See* Medicaid Application, DMA-5200, p. 12, *available at* http://info.dhhs.state.nc.us/olm/forms/dma/dma-5200-ia.pdf. Merely providing a link to a voter registration application that must be printed out by applicants fails to comply with the Section 7's voter registration application *distribution* requirements. *See Ferrand v. Schedler*, No. 2:11-cv-00926-JTM-JCW, 2013 WL 264603, at *25-26 (E.D. La. 2013) (holding that merely providing a link to a downloadable voter registration application during public assistance application process did not comply with the NVRA) *vacated on standing grounds, Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014); *see also* 52 U.S.C. § 20506(a)(6)(A). In order to be NVRA-compliant, DHHS must offer to mail clients a voter registration application to effect distribution to those who lack access to a computer and printer.

### c. Third-Party Contractors

DHHS provides millions of dollars in funding to nonprofit, community-based organizations that distribute food and grocery products to eligible individuals in North Carolina.[7] Among other responsibilities, DHHS has delegated to these grantees the responsibility to enroll individuals in the SNAP program.

It is our understanding that these third-party contractors do not perform the required NVRA voter registration services when engaging in covered transactions (because DHHS has not directed or equipped them to do so). Regardless of whether a public assistance transaction is conducted by DHHS or by a nongovernmental entity with which the state agency has contracted, the NVRA requires North Carolina and DHHS to provide voter registration with each covered transaction. *See* Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q5 ("When a state contracts with a private entity to administer services in an agency that is required to offer voter registration, the ultimate responsibility for ensuring provision of voter registration services remains with the state, and the voter registration requirements under the NVRA remain the same.").

### III.     Conclusion

This letter, pursuant to 52 U.S.C. § 20510(b), serves as notice of NVRA violations by DHHS, as an agency offering public assistance benefits.

Publicly available data and other information demonstrate that DHHS is engaged in ongoing violations of the NVRA. The Executive Director of the State Board of Elections and the Secretary of DHHS are responsible for ensuring NVRA compliance by DHHS, including by local DHHS offices and third-party contractors. *See* N.C. G.S. § 163-82.2; *see also Harkless v. Brunner*, 545 F.3d 445, 451 (6th Cir. 2008) (chief election official is "responsible for implementing the state's function"); *id.* at 455 (head of "single state agency" responsible for administering public assistance programs has responsibility to provide statewide voter registration services).

North Carolina must make prompt changes to ensure that the NVRA is properly implemented so that all of its citizens, including the more than one million individuals who receive public assistance, are able to register to vote and participate in elections.

We would be pleased to work cooperatively with the NCSBE and DHHS to develop a plan for bringing North Carolina into compliance with the NVRA, as we have successfully done with North Carolina previously as well as with other states. We are prepared to meet with you and other state officials, at your earliest convenience,

---

[7] *See* Letter to Joint Legislative Oversight Committee on Health and Human Services from Adam Sholar, Director of Government Affairs, DHHS, June 27, 2014, *available at* http://ncleg.net/documentsites/committees/JLOCHHS/Handouts_and_Minutes_by_Interim/2014-15 Interim HHS Handouts/September 9, 2014/Reports/DHHS Nonprofit Grants Report 62714.pdf.

6

to assist in your development of a comprehensive compliance plan. In the absence of such a plan, we will have no alternative but to initiate litigation at the conclusion of the statutory 90-day waiting period.

Please advise us promptly of the steps you intend to take to remedy North Carolina's violations of Section 7 of the NVRA.

Sincerely,

*Stuart Naifeh*
Stuart Naifeh
Naila Awan
Dēmos
220 Fifth Ave,. 2nd Floor
New York, NY, 10001
(212) 633-1405

*Robert A. Kengle*
Robert A. Kengle
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005

*Catherine M. Flanagan*
Catherine M. Flanagan
Sarah Brannon
Project Vote
1350 I Street NW, Suite 1250
Washington, DC 20005
(202) 546-4173

*Allison Riggs*
Allison Riggs
Anita Earls
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707

cc:     Dr. Aldona Wos
        Secretary
        North Carolina Department of Health and Human Services
        2001 Mail Service Center
        Raleigh, NC 27699-2001
        Aldona.wos@dhhs.nc.gov