IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:15-cv-1063

| | | |
|---|---|---|
| ACTION NC, DEMOCRACY NORTH CAROLINA, NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE, SHERRY DENISE HOLVERSON, ISABEL NAJERA, and ALEXANDRIA MARIE LANE, | ) ) ) ) ) ) | |
| | ) | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANT STRACH |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| KIM WESTBROOK STRACH, *in her official capacity as Executive Director of the North Carolina State Board of Elections*; RICK BRAJER, *in his official capacity as Secretary of the North Carolina Department of Health and Human Services*; KELLY THOMAS, *in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles*, and NICK TENNYSON, *in his official capacity as Secretary of the North Carolina Department of Transportation*, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

NOW COMES Defendant KIM WESTBROOK STRACH, in her official capacity as Executive Director of the North Carolina State Board of Elections ("Defendant Strach") and files this Memorandum in support of her Motion to Dismiss this action.

## NATURE OF THE CASE

Plaintiffs filed their Complaint on December 15, 2015, seeking declaratory and injunctive relief for alleged violations of the National Voter Registration Act ("NVRA"), 52 U.S.C. §20501 *et seq*. Defendant Strach has filed an Answer and a Motion to Dismiss the Complaint.

## COMPLAINT ALLEGATIONS

Plaintiffs in this action are three organizations and three individuals. Plaintiffs purport to bring this action pursuant to Section 11(b) of the NVRA, 52 U.S.C. §20501(b). (Compl. ¶18) The gravamen of Plaintiffs' Complaint is that Defendants, all of whom are State officials, are in violation of Section 5 and Section 7 of the NVRA, 52 U.S.C. §20504 and 20506, respectively, for allegedly failing to comply with voter registration requirements. (*Id*. ¶¶1-17) The Section 5 claim concerns alleged compliance problems at North Carolina Department of Motor Vehicle ("DMV") offices (*Id*. ¶¶76-84) and alleged deficiencies with DMV's online system. (*Id*. ¶¶85-89) The Section 7 claim concerns alleged compliance problems at Department of Health and Human Services ("DHHS") offices (*Id*. ¶¶45-53), an alleged problem with third-party contractors (*Id*. ¶64), and an alleged problem with the provision of voter registration application services in remote transactions by internet, telephone and mail. (*Id*. ¶65)

Each of the Plaintiff Organizations alleges that it conducts voter outreach and voter registration drives. (Compl. ¶¶22-23, (Action NC); ¶26 (Democracy NC), ¶¶28-29 (North Carolina A. Philip Randolph Institute ["APRI"])). All three organizations allege,

*upon information and belief*, that a "substantial proportion of the unregistered individuals reached" by each of them "have contact with the DMV and/or public assistance agencies, and could have registered to vote without [] assistance had Defendants complied with their obligations under NVRA." (Compl. ¶¶23, 26, 29)  They allege that as a "direct result" of Defendants' non-compliance, they have had to "divert time and resources to voter registration efforts, which [they] otherwise would have directed toward" their other voter education efforts and that this alleged harm will continue. (*Id.* ¶¶ 24, 27, 30, 31)

The Individual Plaintiffs allege that they went to a DMV office for a driver's license service and also asked to make a voter registration application.  (Compl. ¶¶ 32-34 (Holverson); Compl. ¶¶35-36 (Najera); Compl. ¶38 (Lane))  These transactions occurred in late May, June, and early October of 2014.  (*Id.*)  When Individual Plaintiffs went to vote in the November 2014 General Election, each submitted a provisional ballot application because her name was not on the registration rolls.  (*Id.*)  They allege, upon information and belief, that their respective ballot applications were not counted because the local board of elections could not confirm any attempt to register in the county at the DMV.  (*Id.*)

Individual Plaintiffs' complaint is based entirely upon the foregoing and there are no allegations about the use of DMV's online services.  These Plaintiffs allege direct injury based on "casting provisional ballots" that were not counted in the 2014 election. (*Id.* ¶39)  They base future harm on allegations that they may relocate in the future and will reasonably need DMV's licensing, change of address and voter registration services.

3

(*Id*. ¶40)  Plaintiff Holverson updated her voter registration at a DMV office in October 2015 and has confirmed her voter registration.  (*Id*. ¶34)

Defendant Strach is sued in her official capacity as the Executive Director of the North Carolina State Board of Elections ("SBOE") and is the chief elections official allegedly charged with coordinating North Carolina's responsibilities under the NVRA, including at DMV and public assistance agencies. (Compl. ¶41)  Defendants Secretary Brajer of the North Carolina Department of Health and Humans Services (DHHS), Secretary Tennyson of the North Carolina Department of Transportation (DOT), and DMV Commissioner Thomas, are sued on the basis that these officials allegedly are responsible for NVRA compliance. (*Id*. ¶¶42-44)

Under Plaintiff Organizations' first cause of action (Section 7, 52 U.S.C. §20506), Defendants' alleged failure to provide the "required voter registration services to individuals engaged in covered public assistance transactions" (Compl. ¶¶ 96-97):

> has injured and will continue to injure the Organization Plaintiffs because of the additional resources invested in voter registration, which have been diverted from other activities important to their missions.  Remediation of these ongoing violations will permit the Organization Plaintiffs to allocate their scarce resources to other important activities.

(*Id*. ¶99)  Plaintiffs request declaratory and injunctive relief to "remedy past and continuing violations of the NVRA and to ensure the Section 7 Defendants' future compliance with the NVRA."  (*Id*. ¶100)  Plaintiffs base this cause of action on alleged system-wide non-compliance at certain types of DHHS public assistance offices (*id*. ¶¶45-55, 66), refer to field investigations in "19 DHHS offices in eleven North Carolina

4

Counties" involving interviews of several office employees and of "196 DHHS clients" (*id.* ¶¶58-64), and cite an alleged decline in voter registration applications originating from public assistance agencies from 2011 to 2014. (*Id.* ¶¶56-57, 68)  Plaintiffs also allege that DHHS third-party contractors are not providing voter registration services (*id.* ¶64) and that DHHS allegedly is not providing voter registration services to clients conducting business through the Internet, telephone, or mail.  (*Id.* ¶65)

Under the second cause of action (Section 5, 52 U.S.C. §20504), Plaintiff Organizations describe their alleged injury and need for remediation using the same language as quoted above from Complaint ¶ 99.  (Compl. ¶103)  The Individual Plaintiffs reiterate their alleged past and future injuries based on their experiences at DMV offices and again claim "a strong likelihood of future harm in the event they relocate within the State of North Carolina and attempt to exercise their rights under Section 5 to register to vote or update their voter registration information." (*Id.* ¶104)  Plaintiffs seek declaratory and injunctive relief to "remedy past and continuing violations of the NVRA  and to ensure the Section 5 Defendants' future compliance with the NVRA."  (*Id.* ¶ 105)  The alleged past violations arise from DMV *in-office* transactions for alleged failure to transmit registration records to the State Board of Elections, among other things (*id.* ¶¶69-78, 84), which allegedly harms persons, like the Individual Plaintiffs.  (*Id.* ¶¶79-83).  Plaintiffs also allege that DMV's *online* portal for voter registration services is noncompliant. (*Id.* ¶¶ 86-90)

5

Plaintiff Organizations sent a letter dated May 8, 2015, to Defendant Strach and copied to the DHHS Secretary, concerning alleged Section 7 noncompliance. (Compl. ¶¶91-92) Plaintiff Organizations and the Individual Plaintiffs sent a letter on June 1, 2015, to Defendant Strach and the DOT/DMV Defendants concerning alleged Section 5 violations. (*Id*. ¶¶93-94) Plaintiffs conclude, upon information and belief, that Defendants have not "taken the steps necessary to remedy their noncompliance with Section 7 or 5 of the NVRA." (*Id*. ¶95)

## QUESTIONS PRESENTED

I.    Are the Individual Plaintiffs' claims barred by the Eleventh Amendment and by lack of standing?

II.   Do Plaintiff Organizations lack standing?

III.  Does the Eleventh Amendment Bar the Section 7 Claim Because Plaintiff Organizations' Letter Was Insufficient to Provide Actionable Notice?

IV.   Does the NVRA apply to "online" or "remote" transactions?

V.    Does the third-party contractor claim fail based on standing and under the NVRA?

## STANDARD OF REVIEW

The standard of review for a lack of subject matter jurisdiction pursuant to a motion to dismiss under Rule 12(b)(1) is set forth generally in *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The plaintiff bears the burden of showing that jurisdiction is appropriate. *Evans v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999). In the present case, Defendant Strach's Rule 12(b)(1) challenge arises from the face of the Complaint, as well as from facts apart from the Complaint, as allowed in *Bain*. The district court may

6

consider evidence outside of the pleadings without converting the proceeding to one for summary judgment. *Evans*, 166 F.3d at 647.

Even though all well-pled allegations are presumed to be true and must be viewed in the light most favorable to the plaintiff, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008),to survive a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A plaintiff must plead facts sufficient to raise a right to relief above the speculative level. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

## ARGUMENT

## I. THE INDIVIDUAL PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT AND BY LACK OF STANDING.

The Eleventh Amendment bars actions against a State by its citizens in federal court. *Ex parte Young,* 209 U.S. 123, 150 (1908). An exception to this bar, however, may exist for ongoing violations of federal law by a state official when the relief sought is prospective injunctive relief for the official's ongoing violation of federal law. *Id*. at 157. The Eleventh Amendment bars actions against a state official where there is not an ongoing violation of federal law. *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Additionally, the Eleventh Amendment bars retrospective relief against a state official. *Id*.

7

All three Plaintiffs are registered to vote. Plaintiff Holverson has confirmed that she registered to vote in October 2015. (Compl. ¶34) Plaintiffs Najera and Lane did not allege their registration status in the Complaint, but the facts apart from the Complaint show that Plaintiff Najera and Plaintiff Lane are registered to vote. (*Declaration of Brian Neesby*, ¶¶8-10, with Exhibits 1-3) Thus, none of the Individual Plaintiffs has an ongoing impairment to her right to vote in the upcoming federal election. Although these Plaintiffs allege past injuries arising from submitting a provisional ballot application, (Compl. ¶39), Plaintiffs cannot recover retrospective relief from Defendant Strach because such relief is barred by the Eleventh Amendment. *Republic of Paraguay,* 134 F.3d at 627. Accordingly, the Eleventh Amendment bars the Individual Plaintiffs' action against Defendant Strach because there is no redressable injury and Plaintiffs' claims should be dismissed from this action pursuant to Rule 12(b)(1) and/or Rule 12(b)(2).

The fact that all three Individual Plaintiffs are registered to vote also shows their lack of standing. Federal jurisdiction is limited to actual cases and controversies. U.S. Const. art. III, § 2. To establish Article III standing, a plaintiff must allege facts which demonstrate: (1) the existence of a "concrete and particularized" injury-in-fact; (2) "a causal connection between the injury and the conduct complained of"; and (3) that a favorable adjudication would likely redress the alleged injury. *Lujan v. Defenders of Wild Life*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 180-81 (2000). Under the NVRA, it is essential to standing that a plaintiff

show an ongoing impairment to her right to vote in a federal election. *Broyles v. Texas*, 618 F. Supp. 2d 661, 690-691 (S.D. Tex. 2009).

Although each Plaintiff claims that she might need DMV's services in the future because she might move, and by inference, might be harmed by DMV's services (Compl. ¶40), these allegations are completely speculative. The allegations do not rise to the concrete and particularized injury sufficient to sustain standing for prospective injunctive relief relating to *in-office* DMV voter registration processes.

> The imminence requirement is "stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." Thus the Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all."

*Doe v. Obama,* 631 F.3d 157, 163 (4th Cir.) (quoting *Lujan*, 504 U.S. at 565 n.2), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2938, 180 L. Ed. 2d 226 (2011). Plaintiffs also allege that DMV noncompliance "create[s] and will continue to create the risk that potential voters were and will be unable to cast such ballots or will be deterred from doing so," but Plaintiffs' must assert their own legal rights and interests, and "cannot rest [their] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Because the Individual Plaintiffs are registered to vote, and have otherwise alleged no concrete injury arising from an ongoing violation of federal law, Plaintiffs do not have a redressable injury and their "*in-office*" claim must be dismissed pursuant to Rule 12(b)(1).

9

Furthermore, although the Complaint alleges that DMV's online voter registration services are deficient (Compl. ¶¶86-89), the Individual Plaintiffs alleged that they utilized DMV's *in-office* services, not DMV's *online* services. The Complaint is devoid of any factual allegations of a concrete harm to the Individual Plaintiffs arising from DMV online voter registration processes. *See Scott v. Schedler*, 771 F.3d 831, 835 n. 8 (5th Cir. 2014). Individual Plaintiffs lack standing pursuant to Rule 12(b)(1) to maintain any claim for DMV *online* services and this claim must be dismissed as well.

## II.   PLAINTIFF ORGANIZATIONS LACK STANDING.

The same injury-in-fact standing test applicable to an individual applies to an organization. *Maryland Highways Contractors Ass'n. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991). An organization may establish standing in its own right or based on harm to its members. *Id.* To sue in its own right, the organization must have suffered a "concrete and demonstrable injury to the organization's activities - with [a] consequent drain on the organization's resources – constitute[ing] . . . more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). "[A]n injury to organizational purpose, without more, does not provide a basis for standing." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013).

Although Plaintiff Organizations allege that violations of the NVRA have caused them to divert their resources to voter registration and away from other activities important to their missions (Compl. ¶¶99, 103; *see also* Compl. ¶¶24, 27, 31), these

10

allegations are not anchored to any facts connecting Plaintiffs' activities with voter registration assistance for DHHS clients at DHHS public assistance agencies or for persons seeking services from DMV. By their own Complaint, Plaintiff Organizations conduct voter registration campaigns or voter education in the State. (Compl. ¶¶22-23, 26, 28-29) Plaintiff Organizations, however, do not link these activities with any alleged NVRA non-compliance. Plaintiff Organizations merely allege that *upon information and belief*, during the course of their general voter registration activities, a "substantial proportion of the unregistered individuals" that they have reached "have contact with the DMV and/or public assistance agencies, and could have registered to vote without" assistance from Plaintiff Organizations "had Defendants complied with their obligations under NVRA." (Compl. ¶¶23, 26, 29)

Conclusory allegations based solely "upon information and belief" do not meet the pleadings standard and are insufficient to survive a motion to dismiss because "Rule 8(a)(2) requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *See Twombly*, 550 U.S. at 555 n.3; *In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 931 (6th Cir. 2014); *Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 174225, **8-9 (D. Md. Dec. 16, 2014); *Mann Bracken, LLP v. Exec. Risk Indem., Inc.*, 2015 U.S. Dist. LEXIS 165155 (D. Md. Dec. 9, 2015). That "showing" must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted); *see also Mann v. Palmer*, 713

F.3d 1306, 1315 (11th Cir.)(court does not have to accept as true allegations based merely "upon information and belief"), *cert. denied*, 133 S. Ct. 1752, 185 L.E. 2d 806 (2013).

The persons whom Plaintiffs have assisted with registration should be known to them.  This situation is completely unlike the situation where "upon information and belief" pleadings are tolerated at the dismissal stage because the information is generally within the control or possession of *defendants.  Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Persons whom Plaintiffs may have assisted are not facts peculiarly within the control or possession of the State Official Defendants in this case. Plaintiffs' speculations that they may have assisted persons who have contact with DHHS public assistance agencies do not establish the specific, concrete injury necessary sufficient to support this Court's Article III subject matter jurisdiction.  Plaintiffs use the "formulaic" standing language of "diversion of their resources," but fail to offer any factual allegations connecting this alleged diversion to the alleged NVRA non-compliance.

Although Plaintiff Organizations complain about compliance at some types of DHHS public assistance agencies (*see* Compl. ¶6), these Plaintiffs do not allege that they have redirected their resources toward assisting DHHS customers with voter registration, or toward conducting voter registration drives at the DHHS public assistance agencies named in the Complaint, much less toward conducting any such drives in the public assistance offices in the Counties specified in the Complaint.  (S*ee* Compl. ¶59)  In other words, Plaintiffs have done nothing more than they would have normally done, regardless

12

of Defendants' alleged noncompliance.  Plaintiffs have alleged nothing more than during their normal course of business, Plaintiffs' activities may have reached persons who may "have contact with the DMV and/or public assistance agencies;" then again, they may not have reached or made such contact.  Plaintiff Organizations have not demonstrated an injury-in-fact causally connected to Defendants' alleged noncompliance under Section 7 for DHHS *in-person* transactions**.**  Plaintiff Organizations' claims concerning alleged non-compliance at DHHS *in-person* transactions must be dismissed pursuant to Rule 12(b)(1).

Additionally, the Complaint is devoid of *any* anchoring factual allegations about how these Plaintiff Organizations have used their resources to assist or to conduct voter registration drives in relation to "remote" public assistance transactions whether by phone or online.  In fact, the DHHS "remote" transactions "sub-claim" is not grounded in *any* factual allegations related to *any* Plaintiff, but rather is thrown into the Complaint in a conclusory fashion.  (Compl. ¶65)  There is no injury alleged.  Plaintiffs fail to allege facts to show standing to pursue this claim, which should be dismissed pursuant to Rule 12(b)(1).

With respect to DMV alleged non-compliance, the Complaint is devoid of any factual allegations that Plaintiff Organizations have used their resources to organize and conduct voter registration drives targeting persons waiting at DMV offices, or utilizing DMV *in-office services*.  Plaintiff Organizations do not allege that they have used their resources to organize or conduct voter registration drives geared toward persons utilizing

13

DMV's *online services*, or otherwise assisted such persons in undertaking such transactions.  Plaintiffs fail to allege facts to show standing to pursue the DMV Section 5 claim for DMV *in-office* or *online* services, and these claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## III.  BECAUSE THE MAY 8, 2015 LETTER WAS INSUFFICIENT, THE ELEVENTH AMENDMENT BARS PLAINTIFFS' SECTION 7 CLAIMS.

As previously noted, the *Ex parte Young* doctrine creates an exception to  Eleventh Amendment immunity for ongoing violations of federal law by a state official when the relief sought is prospective injunctive relief for the official's ongoing violation of federal law.  *Ex parte Young,* 209 U.S. at 157.  Congress may, and has, codified the *Ex parte Young* doctrine to allow private causes of action.  *See, e.g., Brennan v. Stewart*, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988)(habeas claims in the federal courts under 28 U.S.C. § 2254 are effectively suits against the states. These suits pass muster under the Eleventh Amendment because the habeas theory of a civil suit against the bad jailer fits perfectly with the *Ex parte Young* fiction).  An action brought against a state official under *Ex parte Young* exposes a state official to the full remedial powers of a federal court, including, presumably, contempt sanctions.

Congress codified the *Ex parte Young* doctrine in the NVRA.  Congress authorized a person aggrieved to bring a private cause of action for "declaratory and (prospective) injunctive relief with respect to [a] violation" of the Act.  52 U.S.C. § 20510(b)(2).  Congress, however, expressly conditioned this *Ex parte Young* relief: (1) upon "written notice of a violation to the chief election official of the State involved," 52

14

U.S.C. § 20510 (b)(1); and (2) only "if the violation is not corrected within 90 days" of the written notice, or 20 days if the violation occurred 120 days before a federal election. 52 U.S.C. § 20510(b)(2).[1] Congress intended to give the chief State election official the opportunity to correct the alleged, ongoing violation and avoid a lawsuit. If a violation is not corrected, then the requirement of an ongoing violation is met in accordance with the minimum threshold in the *Ex parte Young* doctrine.

The written notice of the violation, however, must contain sufficiently particularized information in order to enable a chief State election official to substantiate and correct an alleged violation, as Congress intended in 52 U.S.C. § 20510(b)(1) and (2). Congress did not set forth specific standards for the notice, but common sense dictates that if an aggrieved person does not provide detail sufficient about the violation, then it cannot be substantiated and corrected.

Plaintiff Organizations provided a deficient notice. Their May 8, 2015 letter ("DHHS letter") concerned alleged problems with NVRA compliance based on field investigations in October 2014 at 19 DHHS offices in eleven counties and concluded that there was some combination of problems at six offices. (Answer, Exhibit 1, pp. 4-5) The letter did not identify either the 11 counties or the six offices.

_____

[1] The Fourth Circuit has recognized that the notice provision is a mandatory prerequisite to a plaintiff filing suit, with the exception of situation where the alleged violation occurs thirty days before a federal election. *National Coalition for Students with Disabilities Educ. & Legal Defense Fund v. Gilmore*, 152 F.3d 283, 286 n.2 (4th Cir. 1998); *see also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 715 (N.D. Miss. 2014)(compiling cases holding notice requirements are mandatory).

15

Plaintiffs now rely on the field investigations for the Section 7 claim. (Compl. ¶¶58-64) Plaintiffs summarily allege, upon information and belief, that Defendant Strach has not resolved the alleged compliance issues. (Compl. ¶95) Yet the letter never pinpointed the field office locations. Although the letter compiled data, drew summary conclusions therefrom, and asserted a compliance problem, the letter did not connect the data to the six offices. (Answer, Ex. 1, pp. 3-4) The NVRA does not measure compliance based on percentages, and the data standing alone was not a violation. Additionally, Plaintiff Organizations indicated in the DHHS letter that third-party contractors were not providing NVRA services without identifying any specifics. (Answer, Ex. 1, p. 6) Plaintiffs now conclusorily allege violations by third-party contractors, but provide no names. (Compl. ¶64)

The DHHS letter did not provide actionable notice of redressable wrongs. Plaintiffs appear satisfied that a conclusory repetition of their survey results in their Complaint are proof of subsequent inaction by Defendants. This approach is far afield from the type of concrete injury Congress envisioned when it imposed a fixed deadline for remedial action by State administrators. Even if unspecified allegations could support a private right of action for Plaintiffs' claim, the Complaint fails to allege, except upon information and belief, that Defendant has not remedied whatever initial injury existed— Plaintiffs allege nothing in the way of a new survey after Defendants' effort to review and ensure compliance efforts. This Court should reject Plaintiffs' invitation to broaden the doorway of civil action under the NVRA beyond that intended by Congress.

16

The DHHS letter did not constitute the identification of a violation sufficient to waive the State's Eleventh Amendment immunity and subject a state official to suit. Plaintiff Organizations' letter failed to meet the congressional condition precedent in 52 U.S.C. § 20510(b)(1) and (2) for allowing an *Ex parte Young* action. Thus the Eleventh Amendment bars this lawsuit with respect to Plaintiffs' claims against Defendant Strach arising under Section 7 of the NVRA and these claims should be dismissed pursuant to Rule 12(b)(1), or alternatively, Rule 12(b)(2) or 12(b)(6) .

## IV.  THE NVRA APPLIES TO IN-PERSON TRANSACTIONS, NOT ONLINE OR REMOTE ONES.

Although Plaintiffs allege that the NVRA applies to "remote" public assistance agency transactions by mail, telephone, and online and to DMV online transactions (Compl. ¶¶65, 86-89), these allegations lack statutory support. The interpretation of a statute or law begins with the express language of the statute and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992); *Clark v. Absolute Collection Serv.*, 741 F.3d 487, 489-90 (4th Cir. 2014). The NVRA speaks in clear, unambiguous terms. The provisions of 52 U.S.C. § 20502 expressly limit the coverage of the NVRA to "application *in person*…at federal, state or nongovernmental office designated under Section 7." (emphasis added). In interpreting statutes, courts must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous. *Clark*, 741 F.3d at 491. Congress' use of "*in person*" in defining the kind of applications covered by the NVRA

17

is not mere surplusage. It is used to delineate a distinct category of transactions covered by the Act, namely applications *in-person* at certain designated offices. The distribution of forms described in 52 U.S.C. § 20506(6)(A) with respect to an application for public assistance services is in the context of *in-person* transactions.

Plaintiffs also allege that the NVRA applies to "online" DMV transactions. (Compl. ¶86-89) The provisions of 52 USC § 20503 apply to state drivers' license applications and change of address forms. In 1993, when the NVRA was enacted, such applications were made in-person. 52 USC § 20504 specifically requires an attestation and a signature on the DMV application, 52 U.S.C. § 20504 (c)(C)(ii)(iii), as well as "a statement that if an applicant does register to vote, *the office* at which the applicant submits a voter registration application will remain confidential and will be used only for voter registration." 52 U.S.C. § 20504 (c)(D)(iii). (emphasis added). Congress' use of "the office" is not mere surplusage, but is used to delineate the in-person transactions covered by Section 5. Both the House and Senate Committee Reports[2] confirm that the NVRA applies to application procedures for *in-office* transactions and describe, for example, staff instructing an applicant completing a driver's license application *at* the driver's license bureau or motor vehicle office. H.R. Rep. 103-9, at 7, 8, 9, 27, 103rd Cong., 1st Sess. (1993); Sen. Report 103-6, at 6, 103rd Cong., 1st Sess. (1993).

---

[2] Both reports are reprinted in "Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples," Federal Election Commission (Jan. 1, 1994), available at http://www.eac .gov/assets/1/Page/Implementing%20the%20NVRA%20of%2019 93%20Requirements%20Issues%20Approaches%20and%20 Examples%20Jan%201%201994.pdf.

18

It is also worth noting that bills entitled the "Voter Registration Modernization Act of 2012," H.R. 5799 (112th)(May 17, 2012), H.R. 12 (113th)(January 23, 2013), and H.R. 12 (March 19, 2105) have been introduced in Congress to consider modernization of the NVRA to cover internet, or "remote," transactions in order to make online voter registration available on official public websites. *See* CONG. REC.-Senate S2598 (May 4, 2015)(Statement of Sen. Booker)(Stating it was now time to adopt pro-technology measures, including online availability of voter registration forms, online assistance, and online voter registration updating). To date, Congress has not enacted these bills. Congress is certainly aware of electronic transactions and has modernized other voting and registration statutes to cover electronic transactions, as for example with military registration and balloting. 42 USC § 1973ff-1. Whether amending the NVRA to cover "remote" or "online" transactions is a good idea, Congress has not done so to this point.

Thus, Plaintiffs allegations concerning remote public assistance agency transactions, as well as remote DMV transactions fail to support a claim for relief as a matter of law and these Section 7 and Section 5 "sub-claims" should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## V. THE SECTION 7 CLAIM CONCERNING "THIRD-PARTY CONTRACTORS" FAILS.

Plaintiff Organizations summarily allege upon information and belief that DHHS does not provide voter registration services to individuals engaged in transactions with third-party contractors, or nongovernmental entities. (Compl. ¶64) This "sub-claim" must be dismissed for lack of standing pursuant to Rule 12(b)(1). The Complaint is

19

devoid of any allegations showing a concrete, particularized injury to the Plaintiff Organizations, including no allegations of how any organization has diverted its resources to address this alleged non-compliance. Additionally, this allegation fails to state a claim for relief and must be dismissed pursuant to Rule 12(b)(6). The NVRA, 52 U.S.C. § 20506 does not mandate that nongovernmental offices provide voter registration services. Such services may be provided *if* the nongovernmental office agrees. The NVRA, 52 U.S.C. § 20506(a)(3)(B)(ii). Furthermore, private sector, or nongovernmental agencies, are *encouraged* to cooperate with the States in carrying out 52 U.S.C. § 20506(a), not required. 52 U.S.C. § 20506(b).

## CONCLUSION

For the reasons stated herein, this action should be dismissed.

This the ____ day of _____, 2016.

ROY COOPER
ATTORNEY GENERAL

/s/ Alexander McC. Peters
Alexander McC. Peters
Senior Deputy Attorney General
State Bar No. 13654
Email: apeters@ncdoj.gov

/s/ Lauren M. Clemmons
Lauren M. Clemmons
Special Deputy Attorney General
State Bar No. 15987
Email: lclemmons@ncdoj.gov
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 761-6900

20

**CERTIFICATE OF SERVICE**

I hereby certify that on 17 March 2016, I electronically filed the foregoing

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF

DEFENDANT STRACH with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to:

Anita S. Earls
Allison J. Riggs
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham NC 27707

Matthew M. D'Amore
Joshua R. Stein
Morrison & Foerster LLP
250 West 55th Street
New York NY 10019

Steven M. Kaufmann
Kirk A. Sigmon
Morrison & Foerster LLP
2000 Pennsylvania Ave., NW
Suite 6000
Washington DC 20006

Stuart Naifeh
Naila Awan
Dēmos
220 Fifth Ave., 2nd Flr.
New York NY 10001

Dorian L. Spence
Robert Kengle
Ezra Rosenberg
Lawyers' Committee for Civil Rights
Under Law
1401 New York, Ave., NW
Suite 400
Washington DC 20005

Catherine M. Flanagan
Sarah Brannon
Project Vote
805 15th Street, NW
Suite 250
Washington DC 20005

This the 17th day of March, 2016.

/s/ Lauren M. Clemmons
Lauren M. Clemmons
Special Deputy Attorney General

21