# EXHIBIT B

<u>**SETTLEMENT AGREEMENT**</u>

**COMMON TERMS**

## I.     INTRODUCTION

WHEREAS, on December 15, 2015, Plaintiffs Action NC, Democracy North Carolina, North Carolina A. Philip Randolph Institute, Sherry Denise Holverson, Isabel Najera and Alexandria Marie Lane (collectively, "Plaintiffs"), through their undersigned counsel, brought Civil Action No. 15-cv-1063 in the United States District Court for the Middle District of North Carolina against Kim Westbrook Strach, in her official capacity as Executive Director of the North Carolina State Board of Elections; Rick Brajer, in his official capacity as Secretary of the North Carolina Department of Health and Human Services (succeeded by Mandy K. Cohen); Kelly Thomas, in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles (succeeded by Torre J. Jessup); and Nick Tennyson, in his official capacity as Secretary of the North Carolina Department of Transportation (succeeded by James Trogdon III) (collectively, "Defendants"), alleging violations of Section 5 and Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq.*

WHEREAS, Plaintiffs allege systemic past and ongoing violations of Section 5 and Section 7 of the NVRA and have sought declaratory and injunctive relief from the Court.

WHEREAS, Defendants have denied each and every one of Plaintiffs' allegations of unlawful conduct or wrongdoing, denied all liability, and have asserted a number of defenses to Plaintiffs' claims. Defendants specifically deny: (1) any and all alleged violations of Section 5 or Section 7 or other provisions of the NVRA; (2) that the NVRA applies to remote transactions, including transactions conducted through state agency website online portals; and (3) that Plaintiffs have asserted viable claims for relief or are entitled to relief as demanded in this action. The state officials for the agencies sued in this action acknowledge the importance of voter registration in the State of North Carolina and said officials are committed to robust implementation of the NVRA.

WHEREAS, the Plaintiffs and Defendants (together, "Parties") now desire to resolve this action without further litigation and expense and to avoid the further delay, inconvenience, burden and uncertainty of continued litigation of this matter (including appeals from any verdict).

WHEREAS, Defendants, in order to settle this litigation, have agreed to implement settlement terms that will achieve for the State of North Carolina (and thus for the people of the State of North Carolina) the advancement of voter registration processes beyond those processes that the Defendants contend are required by the NVRA;

WHEREAS, the Parties have agreed to settle this lawsuit on terms set forth in this Settlement Agreement ("Agreement"). By entering into this Agreement, Defendants do not

admit any liability or any violation of the NVRA or any other law, and any actions taken hereunder are not intended to be and shall not in any event be construed as, or deemed to be, an admission or concession or evidence of any liability or any wrongdoing whatsoever on the part of the Defendants. By entering into this Agreement, Plaintiffs do not admit or concede to any defenses or legal positions by Defendants.

NOW THEREFORE, the Parties hereby agree as follows:

## II. TERMS:

The Parties agree that the terms and provisions in Schedules I and II attached hereto are incorporated herein and are part of this Settlement Agreement. Schedule I pertains to the North Carolina Division of Motor Vehicles ("DMV"), and Schedule II pertains to the Department of Health and Human Services ("DHHS").

## III. IMPLEMENTATION OF RELIEF AND DISMISSAL OF ACTION

A. Defendants hereby agree to implement the software changes, practices and procedures set forth in Schedules I and II within sixty (60) calendar days after execution of the Agreement, except as otherwise indicated.

B. One of the Defendants named in this matter is Kim Westbrook Strach, in her official capacity as Executive Director of the North Carolina State Board of Elections. Now that entity has become the North Carolina Bipartisan State Board of Elections & Ethics Enforcement ("SBE"). Director Strach agrees that the Office of the North Carolina Bipartisan State Board of Elections & Ethics Enforcement shall ensure the compliance of any of its employees, agents, representatives, successors and assigns of the Executive Director of the SBE, acting in their official capacities, with the terms of this Agreement as to the obligations of the SBE. Additionally, each Defendant, including any legal successor(s) or assign(s), acting in their official capacities, is bound by the terms of this Agreement.

C. Defendants' agreement to implement these software changes, procedures and practices is not and shall not be interpreted as an acknowledgment that any of these particular procedures and practices are not already in place. Defendants' agreement to the steps outlined herein is not and shall not be interpreted as an acknowledgment that these steps are legally required by the NVRA.

D. The Parties agree that as far as they are aware the steps outlined in this Agreement do not violate any applicable state or federal laws.

E. Effective upon execution of this Agreement by all Parties, the Parties agree to notify the Court and request that all pending deadlines and hearing dates be vacated and this action be dismissed with prejudice.

F. Within five (5) business days of the effective date of this Agreement, the Parties will file a Proposed Order of Dismissal with prejudice, in the form attached as Schedule III to this Agreement ("[Proposed] Order of Dismissal").

G. In consideration for the agreements and representations herein, Plaintiffs fully, finally and forever release, relinquish, discharge and waive any and all claims, demands, actions, damages, costs and expenses against each Defendant (including each Defendant's officials, employees, agents, representatives, successors and assigns) that are asserted or could have been asserted based upon the factual allegations contained in the pleadings in this Action. Nothing herein shall limit the Parties' rights or remedies under the Dispute Resolution Procedures described herein. For the purpose of clarity, nothing in this Agreement, Release or Order of Final Judgment shall be deemed to release, waive or adjudicate any claim arising after the execution of the Agreement.

H. Notwithstanding the Release contained herein, the Parties agree that this Agreement does not resolve the dispute between the Parties as to whether the NVRA applies to *ex parte* Medicaid renewal transactions and, if so, the responsibilities of DHHS and Director Strach allegedly relating thereto. Any past or future NVRA claims arising from or related to *ex parte* Medicaid renewal transactions are not included in the Release provided here.

## IV.  ATTORNEYS' FEES AND EXPENSES

A. Defendants agree to pay to Plaintiffs the total amount of $490,000.00 to compromise and settle all of Plaintiffs' claims, including Plaintiffs' claims for attorneys' fees and litigation expenses and costs (including, without limitation, expert fees and costs). The payment shall be made payable to Morrison & Foerster LLP. Plaintiffs agree to promptly provide Defendants with taxpayer identification numbers and/or completed IRS Forms W9 upon request.

B. This Agreement is not an admission or evidence that any Defendant is liable to Plaintiffs for the payment of attorneys' fees and litigation expenses or costs in, or related to, this Action, but rather represents only the compromise and settlement of a disputed claim. Neither party shall be considered to be or shall claim to be a prevailing party under the NVRA or other law.

C. The compromise and settlement of Plaintiffs' claim for attorneys' fees and litigation expenses and costs against Defendants shall not establish, or be evidence of: (1) a "reasonable" hourly rate for Plaintiffs' counsel or any other counsel; (2) the "reasonableness" of any legal services or activities performed by Plaintiffs' counsel in this or any other action; or (3) the "reasonableness" of any item of litigation expenses or costs in this or any other action.

D. The Plaintiffs' Counsel agree to make available within fifteen (15) days of the Order of Dismissal the necessary documentation of expenses and itemized attorney time to assist with payment. If full payment from Defendants to Plaintiffs is not

made within 90 days of the date of issuance of the Order of Dismissal, this Agreement shall be null and void. In such circumstance, either party may file a motion with the Court seeking relief from the prior Order of Dismissal or that such Order shall be vacated. The non-moving party agrees not to oppose relief from the Order of Dismissal or that the Order be vacated. Prior to and following any motion seeking relief from or vacating the Order of Dismissal, the Parties agree to resume negotiation in good faith and to use all reasonable efforts to reach a new resolution; provided, however, that by this sentence, the Parties do not intend to be bound to resolve the litigation, and the Parties shall have no liability or duty to the other Parties arising from the cessation or termination of such negotiations.

## V.    DURATION

This Agreement shall become effective upon the date in which the last signatory affixes his or her signature to the Agreement. Defendants' obligations under this Agreement shall not become effective until dismissal of the litigation with prejudice. The term shall be three years from entry of an Order of Dismissal and will expire upon the three year anniversary date of the entry of the Order of Dismissal.

Without affecting the finality of the [Proposed] Order of Dismissal, the Court shall retain jurisdiction over this matter, during the term of this Agreement, to resolve any disputes arising under this Agreement in accordance with the Dispute Resolution Procedures described herein.

## VI.    DISPUTE RESOLUTION PROCEDURES

A.    The Parties agree that it is in their mutual interests to resolve disputes informally.

B.    In the event that any Plaintiff(s) contend that a Defendant has failed to substantially perform a material obligation in this Agreement, Plaintiff(s) shall provide written Notice of said failure to all Defendants and shall identify which Defendant or Defendants Plaintiff(s) alleged to be in breach. This Notice shall state the nature of the default and, if applicable and known, the date(s), location(s) and person(s) with knowledge of the failure. Said Notice may propose a plan to cure any default. The Plaintiff's or Plaintiffs' Notice shall request a meeting or telephone conference with the Defendant for the purpose of resolving the default. Plaintiff(s) and Defendant(s) identified in the Notice shall use their best efforts to meet (or confer by telephone) on the issues identified in the Notice within thirty (30) calendar days of Defendants' receipt of said Notice.

"Substantially perform" shall mean: a level of compliance with the terms of the Agreement that ensures the essential requirements of the Agreement are fulfilled. Only substantial non-performance shall constitute a breach of the Agreement. Substantial non-performance occurs when there are violations of the Agreement that are significant, repeated and/or systemic in nature.

-4-

C.   Under no circumstances shall a Plaintiff send a Notice charging substantial nonperformance with a material term of this Agreement within the last ninety (90) calendar days before this Agreement expires.

D.   The Defendant(s) identified in the Notice shall have forty-five (45) calendar days from the date the written Notice is received to respond in writing. The response shall state the nature of the alleged delay or default, the time required for cure, any mitigating factors causing or tending to cause the delay or default and such other information as the Defendant may deem necessary or proper to provide.

E.   Plaintiffs shall respond in writing within thirty (30) calendar days of receiving the Defendant's written response. Plaintiffs shall either accept the Defendant's response or propose an alternative cure. The Parties shall negotiate in good faith and use all reasonable efforts to resolve disputed issues.

F.   If Plaintiffs should fail to substantially perform a material obligation of this Agreement, including dismissal of the lawsuit, the Defendants shall provide written notice of said failure to Plaintiffs and by such notice require performance assurance measures. Should the Plaintiffs fail to perform any of their obligations upon which a Defendant's performance is conditioned, then a Defendant shall not be in default for any delay or other consequences resulting from the Plaintiffs' failure. Upon Plaintiffs' performance, the delay period caused by Plaintiffs' failure shall be added to the time period applicable to a Defendant's performance obligation hereunder.

G.   If the Parties are unable to resolve the disputed issue(s) within one hundred (100) calendar days of receipt of the written Notice, then either party may elect to exercise any other remedies available under the Agreement, or at law, including filing a motion with the Court seeking a judicial determination that the party or parties in question are not substantially complying with this Agreement.

H.   The Parties agree not to seek an order of contempt or the remedy of contempt of Court in filing any motion or document with the Court seeking a judicial determination regarding the terms of this Agreement or to otherwise enforce this Agreement.

I.   Plaintiffs further agree not to seek or otherwise initiate any administrative or civil action to obtain an injunction against Defendants requiring the Defendants to count the votes of voters voting provisionally or to count or otherwise audit the provisional ballots cast in any election in North Carolina in any new NVRA Section 5 or Section 7 claims similar to the claims that were asserted or could have been asserted based upon the factual allegations contained in the pleadings in this Action during the term of this Settlement Agreement. Any disputes seeking relief related to provisional voters during the term of this agreement arising from any NVRA Section 5 or Section 7 claims similar to the claims that were asserted or could have been asserted based upon the factual allegations contained in the

-5-

pleadings in this Action must be resolved pursuant to the terms of this Settlement Agreement and the Dispute Resolution Procedure herein.

J.      If the Court finds that the Defendant(s) named in the motion alleging a breach of the Agreement has not substantially complied with this Agreement, it may enter an order consistent with equitable principles that is designed to achieve Defendant's substantial performance with this Agreement.

K.      Nothing in this Agreement shall constitute an agreement by either party to mediate any dispute. Notwithstanding the foregoing, nothing herein prohibits the Parties from agreeing to and requesting a mediation with a mutually acceptable mediator, with each party to the dispute bearing the party's own costs for mediation expenses.

L.      If Plaintiffs believe that a Defendant named in any motion alleging non-compliance with this Agreement has not complied with an order entered pursuant to Section VI, Plaintiffs may, after reasonable notice to the Defendant, move for further relief from the Court to obtain compliance with the Court's prior order.

M.      This Agreement may be enforced only by the Plaintiffs and Defendants named in the instant lawsuit. Nothing in this Agreement is intended to confer any rights or remedies on any person other than the Parties hereto.

## VII.    ADDITIONAL PROVISIONS

A.      *Entire Agreement:* This Agreement contains all the agreements, conditions, promises and covenants between Plaintiffs and Defendants, and their respective counsel, regarding matters set forth in this Agreement and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of this Agreement.

B.      *Binding Effect:* Plaintiffs and Defendants represent and warrant that they have authority to enter into this Agreement and that this Agreement shall be binding upon, and inure to the benefit of, their successors and assigns. Each of the persons executing this Agreement on behalf of a Plaintiff or Defendant represents and warrants that he or she has the authority to do so.

C.      *Written Modification:* The Agreement may not be amended orally or by performance. Any amendment must be made in written form and signed by duly authorized representatives of the Parties. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement.

D.    If any court issues an order in this matter, or any other matter, that any party thinks modifies or alters the Agreement or their responsibilities under the Agreement, the party will give opposing counsel Notice within thirty (30) days of any such order.

E.    The Parties agree not to seek modification of the Agreement from the Court as a remedy for any alleged breach unless all Parties agree to the modification.

F.    *Interpretation:* Plaintiffs and Defendants have participated in the drafting of this Agreement and, accordingly, any claimed ambiguity shall not be presumptively construed for or against any Plaintiff or Defendant.

G.    *Force Majeure:* No Defendant shall be deemed in default of the Defendant's material obligations hereunder if and so long as the Defendant is prevented from performing such obligations as a result of events beyond Defendant's reasonable control, including without limitation, fire, power failures, any act of war, hostile foreign action, nuclear event, riot, strikes or civil insurrection, earthquake, hurricane, tornado or other catastrophic natural event or act of God.

H.    *Waiver of Appeals:* Plaintiffs and Defendants waive any right to appeal or collaterally attack the Order of Dismissal, if entered in the substantially same form as Schedule III.

I.    *Execution:* This Agreement may be executed in counterparts, each of which shall constitute an original instrument and all of which together shall constitute one and the same Agreement. Facsimile or photocopied signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement.

J.    *No Consent Decree:* This Agreement shall not constitute, be construed as or otherwise be incorporated into a consent decree or other order of the Court.

K.    *Changes in Legislation:* The Plaintiffs and Defendants understand that either or both the United States Congress or the North Carolina General Assembly may enact legislation dealing with one or more of the issues addressed in this Agreement. Defendants and their assigns, affiliates, agents and successors hereby reserve the right to change or modify implementation of the NVRA on the grounds that any term in this Agreement is preempted by or in conflict with any future federal or state legislation.

L.    *Changes in Agency Regulation:* The Plaintiffs and Defendants further understand that various federal and state agencies may enact rules, regulations, policies or restrictions that may necessitate alteration of the obligations under this Agreement. Defendants and their assigns, affiliates, agents and successors hereby reserve the right to change or modify implementation of the NVRA on the grounds that any term in this Agreement is preempted by or in conflict with any future federal or state agency rules, regulations, policies or restrictions.

M.    Defendants shall notify Plaintiffs in writing sixty (60) calendar days before implementing any changes to this Agreement due to restrictions or changes required by future federal or State legislation, or future federal or state agency rule, regulation, policy or restriction; and said notice shall include a description of any necessary alteration(s). This shall include, but shall not be limited to, any change in legislation, rule or regulatory authority allowing voter registration in North Carolina to be completed, affirmed and signed by the voter wholly through a website, or other electronic means, and without an in-person transaction (hereinafter, "Online Registration"). All Parties agree that they will confer in this circumstance and work cooperatively to resolve any issues and make any modifications to the Agreement that might be necessary. The Parties agree that changes made as a result of any such circumstance would not be a *per se* breach of the Agreement. If the Parties cannot agree on the changes to the terms of the Agreement sought because of such a change in circumstances, the Parties agree to initiate the Dispute Resolution Procedure laid out herein before raising any issues with the Court. This provision does not limit Plaintiffs' ability to seek other remedies at law.

N.    *No Waiver of Immunity:* This Agreement shall not be construed to constitute a waiver of sovereign immunity and/or 11th Amendment immunity of the State of North Carolina, any state agency or department or any state official or employee of the State of North Carolina.

O.    *Notices:* All Notices or other communications to any party to this Settlement Agreement shall be in writing and shall be personally delivered or sent by a reputable overnight mail service (e.g., Federal Express), or by first class mail (certified or registered), and shall be given to the respective parties hereto at the following addresses. Any party hereto may change the name and address of the person designated to receive notice on behalf of such party by notice given as provided in this paragraph.

For Plaintiffs: Allison Riggs, Esq., Southern Coalition for Social Justice, 1415 West Highway 54, Suite 101, Durham, NC 27707.

For Defendant DHHS: Lisa Corbett, Esq., General Counsel, NC DHHS, Office of General Counsel, 101 Blair Drive, Raleigh, NC 027603.

For Defendants DMV and DOT: Chuck Watts, Esq., General Counsel, Department of Transportation, 1 South Wilmington St., 1501 Mail Service Center, Raleigh, North Carolina 27699-1501

For Defendant Strach: Josh Lawson, Esq., General Counsel, 430 N. Salisbury St., Suite 3128, Raleigh, NC 27603-5918.

Notices will be deemed effective (i) three (3) working days after deposit, postage prepaid, if mailed, or (ii) the next day if sent by overnight mail.

P.   *Non-Admissibility:* The settlement negotiations resulting in this Agreement have been undertaken by the Parties hereto in good faith and for settlement purposes only, and neither this Agreement nor any evidence of negotiations hereunder shall be offered or received in evidence in this action, or any other action or proceeding, for any purpose other than in an action or proceeding arising under this Agreement.

Q.   *Governing Law:* Any disputes about the meaning of this Agreement arising under contract law shall be governed by and construed and enforced in accordance with the laws of the State of North Carolina applicable to contracts made and to be performed in such state without giving effect to the principles of conflicts of laws. Any disputes about this Agreement arising under the NVRA shall governed by the relevant federal law.

Agreed to:

| PLAINTIFFS | DEFENDANTS |
|---|---|

**Action NC**

By: _____

Date: _____

**Democracy North Carolina**

By: _____

Date: _____

**North Carolina A. Philip Randolph Institute**

By: _____

Date: _____

By: _____
Sherry Denise Holverson

Date: _____

By: _____
Isabel Najera

Date: _____

By: _____
Alexandria Marie Lane

Date: _____

By: _____
Kim Westbrook Strach,
*in her official capacity as Executive Director
of the North Carolina Bipartisan State Board
of Elections and Ethics Enforcement*

Date: _____

By: _____
Mandy K. Cohen, MD, MPH
*in her official capacity as Secretary of the
North Carolina Department of Health and
Human Services*

Date: _____

By: _____
Torre J. Jessup,
*in his official capacity as Commissioner
of the North Carolina Division of Motor
Vehicles (successor to Kelly Thomas)*

Date: _____

By: _____
James Trogdon III,
*in his official capacity as Secretary of the
North Carolina Department of
Transportation (successor to Nick
Tennyson)*

Date: _____

|  |  |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |

**Action NC**

By: _____

Date: _____

**Democracy North Carolina**

By: _____ _James Lopez, E. Me Dir._____

Date: _6/2/18_____

**North Carolina A. Philip Randolph Institute**

By: _____

Date: _____

By: _____
Sherry Denise Holverson

Date: _____

By: _____
Isabel Najera

Date: _____

By: _____
Alexandria Marie Lane

Date: _____

By: _____
Kim Westbrook Strach,
*in her official capacity as Executive Director
of the North Carolina Bipartisan State Board
of Elections and Ethics Enforcement*

Date: _____

By: _____
Mandy K. Cohen, MD, MPH
*in her official capacity as Secretary of the
North Carolina Department of Health and
Human Services*

Date: _____

By: _____
Torre J. Jessup,
*in his official capacity as Commissioner
of the North Carolina Division of Motor
Vehicles (successor to Kelly Thomas)*

Date: _____

By: _____
James Trogdon III,
*in his official capacity as Secretary of the
North Carolina Department of
Transportation (successor to Nick
Tennyson)*

Date: _____

-10-

Case 1:15-cv-01063-LCB-JEP   Document 175-2   Filed 06/25/18   Page 12 of 93

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **Action NC** | By: _____ |
| | Kim Westbrook Strach, |
| By: _____ | *in her official capacity as Executive Director* |
| | *of the North Carolina Bipartisan State Board* |
| Date: _____ | *of Elections and Ethics Enforcement* |
| | |
| | Date: _____ |
| **Democracy North Carolina** | |
| | By: _____ |
| By: _____ | Mandy K. Cohen, MD, MPH |
| | *in her official capacity as Secretary of the* |
| Date: _____ | *North Carolina Department of Health and* |
| | *Human Services* |
| | |
| **North Carolina A. Philip Randolph Institute** | Date: _____ |
| By: _*[signature]*_ | |
| Date: _6 / 13 / 2018_ | By: _____ |
| | Torre J. Jessup, |
| | *in his official capacity as Commissioner* |
| By: _____ | *of the North Carolina Division of Motor* |
| Sherry Denise Holverson | *Vehicles (successor to Kelly Thomas)* |
| | |
| Date: _____ | Date: _____ |
| | |
| By: _____ | By: _____ |
| Isabel Najera | James Trogdon III, |
| | *in his official capacity as Secretary of the* |
| Date: _____ | *North Carolina Department of* |
| | *Transportation (successor to Nick* |
| | *Tennyson)* |
| By: _____ | |
| Alexandria Marie Lane | Date: _____ |
| | |
| Date: _____ | |

-10-

|                          |                          |
|--------------------------|--------------------------|
| **PLAINTIFFS**           | **DEFENDANTS**           |

**Action NC**

By: _____

Date: _____

**Democracy North Carolina**

By: _____

Date: _____

**North Carolina A. Philip Randolph Institute**

By: _____

Date: _____

By: _____
Sherry Denise Holverson

Date: _____

By: _____
Isabel Najera

Date: _____

By: _____
Alexandria Marie Lane

Date: _____

By: _K. Westbr... Troeh_

Kim Westbrook Strach,
*in her official capacity as Executive Director
of the North Carolina Bipartisan State Board
of Elections and Ethics Enforcement*

Date: _6/21/18_____

By: _____
Mandy K. Cohen, MD, MPH
*in her official capacity as Secretary of the
North Carolina Department of Health and
Human Services*

Date: _____

By: _____
Torre J. Jessup,
*in his official capacity as Commissioner
of the North Carolina Division of Motor
Vehicles (successor to Kelly Thomas)*

Date: _____

By: _____
James Trogdon III,
*in his official capacity as Secretary of the
North Carolina Department of
Transportation (successor to Nick
Tennyson)*

Date: _____

-10-

| PLAINTIFFS | DEFENDANTS |
|---|---|

**PLAINTIFFS**

**Action NC**

By: _____

Date: _____


**Democracy North Carolina**

By: _____

Date: _____


**North Carolina A. Philip Randolph Institute**

By: _____

Date: _____


By: _____
Sherry Denise Holverson

Date: _____


By: _____
Isabel Najera

Date: _____


By: _____
Alexandria Marie Lane

Date: _____

**DEFENDANTS**

By: _____
Kim Westbrook Strach,
*in her official capacity as Executive Director
of the North Carolina Bipartisan State Board
of Elections and Ethics Enforcement*

Date: _____

By: _____
Mandy K. Cohen, MD, MPH
*in her official capacity as Secretary of the
North Carolina Department of Health and
Human Services*

Date: 6/19/18

By: _____
Torre J. Jessup,
*in his official capacity as Commissioner
of the North Carolina Division of Motor
Vehicles (successor to Kelly Thomas)*

Date: _____

By: _____
James Trogdon III,
*in his official capacity as Secretary of the
North Carolina Department of
Transportation (successor to Nick
Tennyson)*

Date: _____

-10-

| PLAINTIFFS | DEFENDANTS |
|---|---|

**Action NC**

By: _____

Date: _____

By: _____
Kim Westbrook Strach,
*in her official capacity as Executive Director
of the North Carolina Bipartisan State Board
of Elections and Ethics Enforcement*

Date: _____

**Democracy North Carolina**

By: _____

Date: _____

By: _____
Mandy K. Cohen, MD, MPH
*in her official capacity as Secretary of the
North Carolina Department of Health and
Human Services*

Date: _____

**North Carolina A. Philip Randolph Institute**

By: _____

Date: _____

By: _____
Sherry Denise Holverson

Date: _____

By: _____
*[signature]*
Torre J. Jessup,
*in his official capacity as Commissioner
of the North Carolina Division of Motor
Vehicles (successor to Kelly Thomas)*

Date: 6-20-2018

By: _____
Isabel Najera

Date: _____

By: _____
Alexandria Marie Lane

Date: _____

By: *[signature]*
James Trogdon III,
*in his official capacity as Secretary of the
North Carolina Department of
Transportation (successor to Nick
Tennyson)*

Date: 6/20/2018

-10-

By: _____

Sherry Denise Holverson

Date: _May 29 2018_

By: _Isabel Nájera_

Date: __05-25-18__

By: _Alexandria Marie Lane_
Alexandria Marie Lane

Date: _05/27/18_

10c

## Schedule I

## SCHEDULE I – NVRA SECTION 5 COMPLIANCE

### I.  DEFINITIONS

The following definitions apply for the limited purposes of this Agreement only and for no other purpose unrelated to this Agreement. Neither Plaintiffs nor Defendants admit or agree that these definitions constitute full, complete or accurate statements of applicable law under the NVRA, its regulations or other law.

As used herein for purposes of Schedule I only:

A.  "Agreement" shall refer to this Settlement Agreement, including the Common Terms and Section I – NVRA Section 5 Compliance.

B.  "CBEs" refers to North Carolina county boards of elections.

C.  "Client" means each person who engages in an In-Person Transaction or Remote Transaction concerning the issuance (original, renewal or duplicate) of a Driver's License or Identification Card with DMV.

D.  "Days" means calendar days. If an action must take place within a certain number of days and the deadline would fall on a weekend or holiday, it is sufficient to take the required action on the first business day after the weekend or holiday.

E.  "Declination Form" means the form that is signed by and collected from Clients who decline voter registration services. A Client refusing to sign the Voter Registration Form is also a "Declination."

F.  "Director" means the Executive Director of the SBE acting as the Chief Election Official for North Carolina.

G.  "DMV" means the North Carolina Division of Motor Vehicles and includes, without limitation, its officers, agents and employees.

H.  "DMV Examiner" means all individuals who are front line workers providing Driver's License and Identification Card services to the public and shall include all senior examiners.

I.  "DMV Local Office" means any local DMV office within the state of North Carolina that engages in In-Person Transactions, including their employees and agents.

J.  "Driver's License" means a motor vehicle driver's license as defined in Section 3 of the NVRA, 52 U.S.C. § 20502(3) and includes "any personal identification document issued by" DMV. Under the terms of this Agreement, the term

"Driver's License" shall include an "Identification Card" issued by the Division of Motor Vehicles under Article 2B of Chapter 20 of the General Statutes.

K.    "Incomplete Registrations" or "Incomplete Transactions" shall refer to submitted Voter Registration Forms that have missing, incomplete or illegible information required for registration, including but not limited to missing signatures. This also includes Voter Registration Forms sent electronically from DMV and that are awaiting hard copy signature documentation from DMV so that the voter registration process can be completed.

L.    "In-Person Transaction" means any Driver's License and non-driver Identification Card application, renewal, changes of address or any other transaction, as described in Section 5 of the NVRA, 52 U.S.C. § 20504, that results in issuance of a Driver's License or non-driver Identification Card at a DMV Local Office.

M.    "NVRA" means the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.*

N.    "Remote Transaction" means any Driver's License and non-driver Identification Card applications, renewals or changes of address conducted via DMV's online Driver's License and Identification Card services portals.

O.    "SADLS" shall mean the State Automated Driver's License System.

P.    "SBE" shall mean the North Carolina State Board of Elections, which is now known as the North Carolina Bipartisan State Board of Elections and Ethics Enforcement, and any officials, employees, agents, representatives, successors and assigns of that agency.

Q.    "SBE NVRA Coordinator" means the person designated by the Director, as described in Section IV below, to perform the duties as described herein.

R.    "Section 5" means Section 5 of the NVRA, 52 U.S.C. § 20504.

S.    "SEIMS" shall mean the SBE's State Election Information Management System.

T.    "Voter Registration Form" or "Form" means the voter registration application form described in Section 9 of the NVRA, 52 U.S.C. § 20507(a)(2), or the equivalent North Carolina voter registration application form that is coded by the SBE to reflect it was provided by DMV or a DMV Local Office, or submitted remotely through the DMV website.

U.    "Wet Signature" means an original signature physically marked by a Client on a Voter Registration Form.

-13-

## II. COLLECTION OF DECLINATIONS FROM CLIENTS DECLINING TO REGISTER DURING SECTION 5 COVERED IN-PERSON TRANSACTIONS

A. During each Section 5 covered In-Person Transaction occurring at a DMV Local Office, DMV shall ensure that:

1. Each Client who indicates that they are a U.S. Citizen and are of the applicable age to be eligible to register or pre-register to vote that is engaging in an In-Person Transaction is offered the opportunity to register to vote;

2. Each Client's answer to the offer of voter registration is recorded in SADLS;

3. DMV provides a pre-populated Voter Registration Form to the Client;

4. A Declination Form is provided to each Client who declines to register to vote, chooses not to sign the Voter Registration Form or chooses not to update their voter registration address;

5. A completed Declination Form is collected from each Client who declines voter registration services unless the Client refuses to complete it;

6. When a Client refuses to complete a Declination Form, DMV shall complete and retain a document that indicates the Client's refusal to complete the Declination Form;

7. When a Client decides that he/she would like to retain the pre-populated Voter Registration Form provided by DMV, DMV shall record in SADLS that the Client declined the offer of voter registration services at DMV, and DMV shall complete and retain a document that indicates the Client's decision; and

8. A DMV employee reviews each Voter Registration Form submitted by a Client for completeness of all mandatory fields necessary to apply to register or pre-register to vote, including name, date, date of birth, address(es), identification number, eligibility confirmation and Client signature. DMV shall not review the Form for accuracy, only that such mandatory fields are completed.

B. Transmission of Voter Registration Forms prior to DMV's implementation of the e-signature process detailed in subsection II.E below:

Each completed Voter Registration Form containing a Client's Wet Signature shall be scanned and electronically transmitted to the SBE. Information about the Client necessary for voter registration contained in DMV's files shall also be electronically transmitted to the SBE. DMV shall scan and electronically transmit

-14-

Voter Registration Forms when DMV's computer system is working properly and allows such work to be conducted, but the transmission of such Form shall be no later than five (5) days after it is received. These Voter Registration Forms shall be transferred from DMV to the SBE even if they are missing some information.

C.   Once the information is received by the SBE, the SBE shall check each Client's voter registration status or shall instruct the CBE for the County in which the Client resides to check each Client's voter registration status. If the Client is already registered to vote in the County in which the Client resides, the SBE shall update the Client's voter registration record as necessary or shall instruct the CBE for that County to update the registration record as necessary. If the Client is not registered to vote in the County in which the Client resides and the Voter Registration Form is unsigned, the SBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described below in subsection III.C of this Agreement or the SBE shall instruct the CBE for that County to send the pre-populated Voter Registration Form with a Cover Letter. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV. If the Voter Registration Form is missing any information necessary to register or pre-register the Client, other than a signature, the SBE or the applicable CBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described in subsection III.C of this Agreement. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV.

D.   Scanning and Retention of Declination Forms prior to DMV's implementation of the e-signature process in subsection II.E below:

Each Declination Form shall be scanned and attached to the Client's Driver's License record in SADLS by close of business on the day on which the Form was signed, unless DMV is unable to do so based on the status of DMV's computer systems. In such cases, DMV shall scan and attach Declination Forms when DMV's computer systems allow such work to be conducted.

E.   Transmission of Voter Registration Forms and Declination Forms under DMV's e-signature process:

1.   Working with the SBE, DMV shall create a process for the recordation of e-signatures on Voter Registration Forms and Declination Forms for Section 5 covered In-Person Transactions. This process shall allow a Client to complete and view a Voter Registration Form or Declination Form electronically and allow the Client to electronically sign such Form. DMV shall pre-populate the applicable Form as delineated under 52 U.S.C. § 20504(c) and allow the Client to provide any additional information needed to fully complete the Form. If the Client's response to any eligibility question indicates that the Client is not eligible to register or pre-register, the electronic application process shall terminate, the Client

-15-

shall not be asked for the Client's e-signature and the Client shall be deemed to have declined registration. Other than the responses to the eligibility questions, the Client will not be required to provide any additional information to complete the Form. If the Client indicates that they meet the eligibility requirements, the Client will be requested to e-sign the Form. Following the Client's e-signature, the e-signature will be inserted on the applicable electronic Form.

2.      DMV shall transmit the Voter Registration Form executed with an e-signature to the SBE. The e-signature will constitute a valid signature for the SBE's evaluation of the Voter Registration Form. A Wet Signature shall not be required by the SBE. The SBE shall retain a copy of the electronic Voter Registration Form as delineated under Federal and/or State law. DMV is not required to maintain an electronic copy of the Voter Registration Form conveyed to the SBE.

3.      All Parties understand that the SBE and CBEs may not be able to completely process Voter Registration Forms received through this process that are incomplete because Clients failed to provide all the necessary information during their In-Person Transaction. These Voter Registration Forms shall be transferred to the SBE even if they are missing some information. CBEs shall continue their current processes of following up with the Client as described in subsection II.C above to obtain any missing information from the Client. This includes sending a letter without a new Voter Registration Form to Clients who submit a Voter Registration Form that indicates they are not eligible to register to vote explaining that they have not been registered.

4.      DMV shall retain an electronic copy of the Declination Form, at a minimum, for the time period required under the DMV's record retention policy.

5.      DMV shall work to complete and implement the e-signature process by October 1, 2018.

6.      Upon request from the Plaintiffs, counsel for and/or staff from DMV or the SBE will provide Plaintiffs' counsel with updates about the progress of implementation of the e-signature process every two months from the effective date of this Agreement during the term of this Agreement until such time as the e-signature process is fully completed or Plaintiffs' counsel agrees that the updates are no longer needed.

a.      These updates may be provided through telephone conferences scheduled at a time mutually agreeable to all Parties or through written progress reports provided to Plaintiffs' counsel.

-16-

b. These updates shall include a timeline of when the process shall be completed and implemented and the basis for the delay in completion, if any.

c. Plaintiffs may provide input on the visual design and questions asked of the Client in the e-signature application process, and DMV shall consider such input.

7. Following the implementation of the e-signature process, DMV shall seek to fully impose this process. However, if DMV computer systems do not allow the transmission of these Forms on a given day or time, DMV shall, at the minimum, notify the SBE of the issue and provide hard copy Forms to Clients concerning Voter Registration Forms and Declination Forms.

F. Transmission of Changes of Address

Each change of address submitted during any Section 5 covered In-Person Transaction, regardless of whether the Client signs a form submitting such change of address, shall be electronically transmitted to the SBE unless the Client has affirmatively declined to apply to register to vote or update their voter registration address.

G. Supplies

DMV shall make available to all DMV Local Offices signs and posters that indicate that voter registration is available and shall train the appropriate personnel in each such office to display the signs and posters.

## III. OFFER OF VOTER REGISTRATION SERVICES DURING REMOTE TRANSACTIONS

A. Online Renewal and Replacement Portal

1. Working with the SBE, DMV shall create a process for the recordation of e-signatures on Voter Registration Forms for Remote Transactions in which a Client seeks to renew or replace a Driver's License. This process shall allow a Client to view a Voter Registration Form electronically, and shall allow the Client to electronically sign such Form, providing an affirmation that the Client meets the voter registration eligibility requirements. DMV shall pre-populate the Voter Registration Form as delineated under 52 U.S.C. § 20504(c) and allow the Client to provide any additional information needed to fully complete the Form. The Client will not be required to provide any additional information to complete the Form.

For Remote Transactions, DMV may have varying methods of incorporating a Client's e-signature on the pre-populated Form. Upon

-17-

consent of the Client, these methods may include, but are not limited to, incorporating any prior Wet Signature or e-signature provided by the Client on file with DMV and/or the capturing of a new e-signature from the Client. Following consent of the Client to allow the Client's e-signature, the e-signature will be inserted on the Voter Registration Form.

2. DMV shall ensure that the online portals on DMV's website through which a Client may conduct Driver's License renewal or replacement transactions shall include the following components:

    a. The Client shall have the opportunity to register or pre-register to vote during the renewal or replacement transaction and shall not be required to click on the "Register Me" or "Help Me Register" links.

    b. Notification to the Client, before he/she responds to the voter registration question, that the decision to register (or pre-register) or decline registration shall remain confidential, in language substantially similar to the following:

        *"Your decision to register or pre-register to vote through the DMV or to decline voter registration services through the DMV will remain confidential and will be used only for voter registration purposes."*

    c. Notification to the Client of the voter eligibility requirements. This notification shall be placed immediately prior to the voter registration eligibility questions and shall appear in bold type.

    d. A set of questions to which the Client must respond using "yes" or "no" check boxes to indicate whether the Client meets each of the eligibility requirements to register or pre-register to vote. If the Client's response to any eligibility question indicates that the client is not eligible to register or pre-register, the Client shall be deemed to have declined registration, and the application for voter registration shall not be transmitted to the SBE or any CBE.

    e. A Client who chooses to register to vote shall be requested to affirm that the Client meets the voter eligibility requirements. Except as delineated under III.B, no application for voter registration shall be transmitted to the SBE or any County Board of Elections and no Voter Registration Form or Cover Letter shall be mailed to the Client unless the Client has affirmed that the Client meets the voter eligibility requirements.

3. DMV will transmit the Voter Registration Form executed with an e-signature to the SBE. The e-signature shall constitute a valid signature for

-18-

the SBE's evaluation of the Voter Registration Form. A Wet Signature shall not be required by the SBE. The SBE shall retain a copy of the electronic Voter Registration Form as delineated under Federal and/or State law. DMV is not required to maintain an electronic copy of the Voter Registration Form conveyed to the SBE.

4. Except as provided in III.B., when a Client (i) chooses not to complete voting registration services or (ii) provides responses to the voter eligibility questions indicating that the voter is not eligible to register or pre-register to vote the Client shall be deemed to have declined voter registration. No transmission shall be sent to the SBE as to any such Voter Registration Form. Such Client can continue with their Driver's License services. Notwithstanding the foregoing, if an unsigned Voter Registration Form is transmitted to or received by the SBE, the SBE shall follow up with the Client as provided in subsection II.C.

5. Once the information is received by the SBE, the SBE shall check each Client's voter registration status or shall instruct the CBE for the County in which the Client resides to check each Client's voter registration status. If the Client is already registered to vote in the County in which the Client resides, the SBE shall update the Client's voter registration record as necessary or shall instruct the CBE for that County to update the registration record as necessary. If in circumstance such as a change of address transaction, as discussed in III.B below, the Client is not registered to vote in the County in which the Client resides and the Voter Registration Form does not contain an e-signature or is otherwise unsigned, the SBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described below in subsection III.C of this Agreement or the SBE shall instruct the CBE for that County to send the pre-populated Voter Registration Form with a Cover Letter. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV. If the Voter Registration Form is missing any information necessary to register or pre-register the Client, other than a signature, the SBE or the applicable CBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described in subsection III.C of the Agreement. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV.

6. All Parties understand that the SBE and CBEs may not be able to process voter registrations received through this process that are incomplete because Clients failed to provide all the necessary information during the transaction with the DMV.

7. DMV shall work to complete and implement the e-signature process by August 1, 2018.

-19-

8.  Upon request from the Plaintiffs, counsel for and/or staff from DMV or the SBE will provide Plaintiffs' counsel with updates about the progress of implementation of this e-signature process every two (2) months from the effective date of this Agreement during the term of this Agreement until such time as the e-signature process is fully completed or Plaintiffs' counsel agrees that the updates are no longer needed.

    a.  These updates can be provided through telephone conferences scheduled at a time mutually agreeable to all Parties or through written progress reports provided to Plaintiffs' counsel.

    b.  These updates shall include a timeline of when the process shall be completed and implemented and the basis for the delay in completion, if any.

    c.  Plaintiffs may provide input on the visual design and questions asked of the Client in the e-signature application process, and DMV shall consider such input.

9.  The voter registration portion of the online Driver's License renewal and replacement process shall be available in English by August 1, 2018. DMV shall have the process available in Spanish by October 1, 2018.

10. DMV shall attempt to reduce the use of pop-up windows in its Remote Transaction processes and provide a streamlined application for voter registration.

B.  Online Change-of-Address Portal

    1.  DMV shall modify the portion of its website that provides voter registration services to Clients conducting Driver's License change-of-address transactions online to provide for an opt-out transmittal of updated address information to the SBE.

    2.  Working with the SBE, DMV shall create a process for the recordation of e-signatures on voter registration changes of address for Remote Transactions by a Client previously registered to vote when such signature is needed for the update to the Client's existing voter registration or new registration. In such cases, a Voter Registration Form shall be requested of the Client. This process shall allow a Client to view the Voter Registration Form electronically, and shall allow the Client to electronically sign such Form, providing an affirmation that the Client meets the voter registration eligibility requirements. DMV shall pre-populate the Voter Registration Form and allow the Client to provide any additional information needed to fully complete the Form. The Client will not be required to provide any additional information to complete the Form.

-20-

For Remote Transactions, DMV may have varying methods of incorporating a Client's e-signature on the pre-populated Form. Upon consent of the Client, these methods may include, but are not limited to, incorporating any prior Wet Signature or e-signature provided by the Client on file with DMV and/or the capturing of a new e-signature by the Client. Following consent of the Client to allow the Client's e-signature, the e-signature will be inserted on the Voter Registration Form.

3.    Unless a Client affirmatively opts out of updating their voter registration address during a DMV online change-of-address transaction, the DMV shall electronically send the Client's information to the SBE after the online change-of-address transaction is submitted. DMV shall send the change of address information to the SBE regardless of whether the Client provides an affirmation by e-signature for the change of address update. This transfer of information shall occur daily, unless DMV is unable to do so based on the status of DMV's computer systems. In such cases, DMV shall electronically send the Client's information when DMV's computer systems allow such work to be conducted, but the Client's change of address information shall be transmitted no later than five (5) days after it is received.

4.    Once the change of address is received by the SBE, the SBE shall check each Client's voter registration status or shall instruct the CBE for the County in which the Client resides to check each Client's voter registration status. If the Client is already registered to vote in the County in which the Client resides, the SBE shall update the Client's registration record as necessary or shall instruct the CBE for that County to update the registration record as necessary.

5.    If the Client is not registered to vote in the County in which the Client resides and the transmission from DMV did not include an e-signature or is otherwise incomplete, the SBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described below in subsection III.C of this Agreement, or the SBE shall instruct the CBE for that County to send the pre-populated Voter Registration Form with Cover Letter. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV.

6.    If the change-of-address information provided by the Client during the transaction with DMV is insufficient to complete the Client's Voter Registration Form, the SBE or the CBE shall send the Client a pre-populated Voter Registration Form where possible, with a Cover Letter as described below in subsection III.C of this Agreement. This completed and signed Voter Registration Form returned by the Client shall also be credited as originating with DMV.

-21-

7.    DMV shall modify the change-of-address portal to include the following components:

    a.    Information notifying the Client that DMV will send the Client's new address to the SBE and that the Client may choose not to update their voter registration address.

    b.    Notification that if the Client is not already registered to vote in the County in which the Client resides, they need to submit a new voter registration in order to vote and may apply to register to vote or pre-register during the change-of-address transactions.

    c.    Notification to the Client, before the Client responds to the voter registration question, that their decision to apply to register (or pre-register) or decline application for registration will remain confidential, in language substantially similar to the following:

        *"Your decision to apply to register or pre-register to vote through DMV or to decline voter registration services through DMV will remain confidential and will be used only for voter registration purposes."*

    d.    Notification to the Client of the voter eligibility requirements. This notification shall be placed immediately prior to the voter registration eligibility questions and shall appear in bold type.

    e.    A mechanism by which a Client may indicate either:

        1.    That the Client wishes to update the Client's voting address with the new Driver's License address;

        2.    That the Client wishes to register to vote or pre-register; or

        3.    That the Client does not wish to register to vote or have the Client's voting address updated.

    f.    If the Client fails or refuses to select any option in response to the mechanism established under subsection III.B.7.e, DMV will electronically send the Client's information, including the Client's address, to the SBE.

    g.    Any Client who affirmatively chooses to update their voter registration or register to vote in response to the mechanism established under subsection III.B.7.e shall be provided a set of questions to which the Client must respond to "yes" or "no" check boxes to indicate whether the Client meets each of the eligibility requirements to register or pre-register to vote. If the Client's

-22-

response to any eligibility question indicates that the Client is not eligible to register or pre-register, the Client shall be deemed to have declined registration, and the application for voter registration shall not be transmitted to the SBE or any CBE.

8.    In instances where a signature is needed for the update to the Client's voter registration or to complete a new registration DMV shall convey the Voter Registration Form executed with an e-signature to the SBE, if such Form is completed by the Client. The e-signature shall constitute a valid signature for the SBE's evaluation of the update to the Client's voter registration. A Wet Signature shall not be required by the SBE. The SBE shall retain a copy of the change-of-address indicated on the Voter Registration Form as delineated under Federal and/or State law. DMV is not required to maintain an electronic copy of the change of address form conveyed to the SBE.

9.    Unless the Client opts out pursuant to subsection III.B.7.e, if the Client fails or refuses to complete the necessary Voter Registration Form when a signature is needed for a change of address, DMV will still convey the change of address to the SBE and either the SBE or the CBE in the County where the Client resides shall follow the process set forth in subsection III.B.10 below.

10.    Once the information is received by the SBE, the SBE shall check each Client's voter registration status or shall instruct the CBE for the County in which the Client resides to check each Client's voter registration status. If the Client is already registered to vote in the County in which the Client resides, the SBE shall update the Client's voter registration record as necessary or shall instruct the CBE for that County to update the registration record as necessary. If the Client is not registered to vote in the County in which the Client resides and the transmission from DMV did not include an e-signature or is otherwise incomplete, the SBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described below in subsection III.C of this Agreement, or the SBE shall instruct the CBE for that County to send the pre-populated Voter Registration Form with a Cover Letter. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV. If the Voter Registration Form is missing any information necessary to register or pre-register the Client, other than a signature, the SBE or the applicable CBE shall send the Client a pre-populated Voter Registration Form, with a Cover Letter as described below in subsection III.C of the Agreement. The completed and signed Voter Registration Form returned by the Client shall be credited as originating with DMV.

-23-

11. DMV shall work to complete and implement the e-signature process by August 1, 2018.

12. Upon request from the Plaintiffs, counsel for and/or staff from DMV or the SBE will provide Plaintiffs' counsel with updates about the progress of implementation of this e-signature process every two (2) months from the effective date of this Agreement during the term of this Agreement until such time as the e-signature process is fully completed or Plaintiffs' counsel agrees that the updates are no longer needed.

   a. These updates may be provided through telephone conferences scheduled at a time mutually agreeable to all parties or through written progress reports provided to Plaintiffs' counsel.

   b. These updates shall include a timeline of when the process shall be completed and implemented, and the basis for the delay in completion, if any.

   c. Plaintiffs may provide input on the visual design and questions asked of the Client in the e-signature application process, and DMV shall consider such input.

C. Cover Letter

The SBE shall continue to provide the CBEs with templates for Cover Letters that shall be sent to DMV Clients following DMV transactions as necessary per the terms of this Agreement.

1. In instances where a signature is needed to complete a Voter Registration Form, the Cover Letter shall contain all the information as provided in Exhibit 1 to this Settlement Agreement. The SBE may change the format of the letter as needed, provided that it contains all the information in Exhibit 1. In instances where a DMV Client's Voter Registration Form is missing information or the information provided is deficient, other than a missing signature, the Cover Letter shall contain the following:

   a. An explanation as to why the Client is receiving a pre-populated Voter Registration Form, which should be similar to the DMV follow-up Cover Letter attached as Exhibit 1, including a sentence explaining that this letter is being sent as follow-up to a recent DMV transaction;

   b. A statement that the enclosed pre-populated Voter Registration Form must be completed, signed and returned either to the Client's CBE or to the SBE at the address provided in the Cover Letter;

-24-

c.      A statement that the individual must attest that they meet the qualification to vote in the County in order to complete their registration to vote;

d.      A statement that they can call their CBE or the SBE for assistance, with the numbers provided; and

e.      A statement in Spanish stating that the enclosed Voter Registration Form is available in Spanish and can be obtained by accessing a link, and providing the applicable link(s) to the Spanish language Voter Registration Forms and/or in the future by calling a provided telephone number for Spanish language assistance.

2.      A template Cover Letter containing the information as provided in Exhibit 1 should be provided to CBEs within sixty (60) days of the Execution Date of this Agreement.

D.      Voter registration information provided by DMV to the SBE following an online renewal portal shall continue to be recorded in SEIMS so that it is clear that the voter registration originated from a DMV transaction and shall be credited as originating with DMV if the pre-coded Voter Registration Form is returned by the Client.

E.      Voter Look Up

The SBE currently has a voter search tool on its website. At the end of the "No Results Found" page, the SBE provides the message, "If you are still unable to locate a match, please contact your <u>County Board of Elections</u> or the North Carolina Bipartisan State Board of Elections and Ethics Enforcement." The SBE agrees to revise the message as follows immediately below and to place it directly after the "No Results Found" message:

*"If you believe you have registered to vote, please contact your County Board of Elections or the North Carolina Bipartisan State Board of Elections and Ethics Enforcement. A voter registration application is also available <u>here</u>. You may also try your search again using the following hints:"*

"County Board of Elections" shall continue to be hyperlinked to the SBE's CBE search tool, and the SBE shall also hyperlink the word "here" in the sentence above to a Voter Registration Form that people can print, complete and mail to their appropriate County Board of Elections (or the SBE).

## IV.    STAFFING

A.      The SBE NVRA Coordinator

Case 1:15-cv-01063-LCB-JEP   Document 175-2   Filed 06/25/18   Page 34 of 93

1. The Executive Director shall designate a staff position whose duties include being the "SBE NVRA Coordinator."

2. The SBE NVRA Coordinator will have the duty to coordinate and oversee implementation of the requirements of Section 5 of the NVRA and to fulfill the monitoring and oversight obligations set forth in this Agreement. The SBE NVRA Coordinator may assign tasks to staff at the SBE to assist in fulfilling this duty.

B. The DMV NVRA Point Person

1. DMV shall designate a "DMV NVRA Point Person" who will be responsible for:

   a. Coordinating and overseeing compliance with the requirements of Section 5 of the NVRA and the provisions of this Agreement, including regular communication with the SBE NVRA Coordinator to ensure that DMV fully complies with the requirements of Section 5 and the provisions of this Agreement; and

   b. Ensuring that DMV Local Offices conduct NVRA education and training programs as outlined below in Section V of this Agreement.

## V. TRAINING

A. Trainings Conducted Prior to the Implementation of the E-Signature Process

1. Within sixty (60) days after implementation of this Agreement, DMV shall conduct any trainings necessary to inform DMV Examiners and their supervisors of the requirements of this Agreement, including, but not limited to, trainings related to the procedure DMV Examiners must use when offering voter registration services and the procedure for maintaining and uploading voter Declaration Forms into SADLS.

2. The DMV NVRA Point Person or counsel for DMV shall inform Plaintiffs' counsel when these initial trainings about the requirements of this Agreement are completed. This confirmation can be provided by email.

3. Upon request from Plaintiffs' counsel, a copy of the training materials related to the requirements of this Agreement shall be provided once they are completed.

4. The training outlined in subsection V.A.1 will also be provided to all new DMV Examiners at the onset of their employment.

-26-

5.        Upon request by the Defendants, Plaintiffs will provide materials that they possess that may assist in the development of any training materials.

B.        Trainings Conducted After the Implementation of the E-Signature Process

1.        Within sixty (60) days after implementation of the new e-signature process, DMV shall conduct any trainings necessary to educate DMV Examiners and their supervisors about the new processes.

2.        The DMV NVRA Point Person or counsel for DMV shall inform Plaintiffs' counsel when these initial trainings about the requirements of this Agreement are completed. This confirmation can be provided by email.

3.        Upon request from Plaintiffs' counsel, a copy of the training materials related to the requirements of this Agreement shall be provided once they are completed.

4.        The training outlined in subsection V.B.1 will also be provided to all new DMV Examiners at the onset of their employment.

5.        Upon request by the Defendants, Plaintiffs will provide materials that they possess that may assist in the development of any training materials.

C.        Presuming that the two (2) trainings discussed above are completed in the first year of the term of this Agreement, the SBE NVRA Coordinator and/or DMV shall provide the NVRA refresher training to all DMV Examiners and their supervisors at least once during the second year of the term of this Agreement and at least once during the third year of the term of this Agreement. The DMV Point Person can conduct any follow-up necessary under the monitoring and oversight provisions of this Agreement.

## VI.    DMV DATA AUDITING, COLLECTION, ANALYSIS AND REPORTING

A.        Audit of In-Person Transactions

1.        During the course of this Agreement, the DMV NVRA Point Person shall conduct an audit of In-Person Transactions, selected randomly, occurring in each Local Office.

a.        The audit shall consist of the following steps:

1.        DMV shall retrieve a total of 2,500 records for In-Person Transactions every month, with at least one transaction drawn from each Local Office;

-27-

2. For each transaction during which SADLS indicates that the Client declined voter registration, confirm whether there is a signed Declination Form, or a DMV Examiner's written notification that the Client retained the Voter Registration Form for further consideration, attached to the Client's file;

3. For each transaction during which SADLS indicates that the Client accepted voter registration services, confirm whether the Client's signed Voter Registration Form and voter registration information have been transmitted to the SBE, whether the registration was successfully processed by the CBE and, if not, the reasons why; and

4. DMV shall create an audit report quarterly under the term of this Agreement. The audit report shall include data, listed by specific DMV Local Office of the number of audited transactions under subsection VI.A.1.a.2 above (where the Client declined to register to vote), the number of audited transactions under subsection VI.A.1.a.3 above (where the Client accepted voter registration services), and the number of confirmations for each category.

b. The results of each audit shall be reported to the SBE NVRA Coordinator within five (5) days of completion.

c. The SBE NVRA Coordinator shall make this quarterly audit report available to Plaintiffs' counsel upon request.

d. The monthly auditing shall begin on September 4, 2018, and shall include transactions beginning on or after August 1, 2018.

2. If more than 1% of the In-Person Transactions that are audited from a given DMV Local Office fail the audit (i.e., the Client's response to the voter registration question in SADLS is not matched by a scanned Declination Form or record of transmittal of the Voter Registration Form, as applicable), the DMV NVRA Point Person shall:

a. Inform the SBE NVRA Coordinator;

b. Work with the SBE NVRA Coordinator to identify the cause of incorrect transactions and to correct the problem, including using their best efforts to coordinate remedial action with respect to Clients known to have not received voter registration services; and

c. Take the necessary action with the SBE and within DMV to correct the cause of the incorrect transactions, including

-28-

conducting further training of DMV employees or making changes to DMV software or computer systems as necessary.

B.      Monthly Data Collection and Reporting

     1.     DMV Collection and Reporting

DMV shall collect and report to the SBE NVRA Coordinator the following data on a monthly basis:

       a.     In-Person Transactions

           1.     The total number of In-Person Transactions processed at DMV Local Offices; and

           2.     The total responses in SADLS broken down by the response reported, indicating whether the Client registered to vote, changed their voter registration address or declined voter registration services.

       b.    Remote Transactions

           1.     The total number of Remote Transactions conducted through the DMV's online portal; and

           2.     The total responses broken down by response reported by Clients – "yes to voter registration," "yes to change in address" and "decline to voter registration."

       c.     As part of the implementation of the e-signature process, DMV shall include the capacity to track and report the following information, which shall be reported to the SBE NVRA Coordinator:

           1.     The total number of In-Person Transactions for which a Voter Registration Form was submitted and the total number of In-Person Transactions where a Declination Form was signed, with each total broken down by DMV Local Office, if possible, or by County;

           2.     The total number of In-Person Transactions during which a change of address was reported (including renewals and change-of-address transactions), broken down by DMV Local Office, if possible, or by County; and

-29-

3. The total number of Remote Transactions during which a change of address was reported (including renewals and change-of-address transactions).

## VII. ADDITIONAL COMPLIANCE MEASURES

A. Individual Corrective Actions

1. If, in the future, a DMV Examiner or the DMV NVRA Point Person determines, at any point, that an identifiable DMV Client was not offered voter registration services as required under Section 5 of the NVRA, or this Agreement, the employee shall notify the DMV NVRA Point Person immediately.

2. Within fourteen (14) days of receiving such notice, the DMV Local Office or DMV NVRA Point Person shall send a remedial mailing to the Client and enclose a Voter Registration Form and explanatory notice. The explanatory notice shall:

a. Advise the Client that (s)he is receiving the mailing because (s)he may not have been offered the opportunity to apply to register or pre-register to vote;

b. Advise the Client that the mailing does not affect the individual's registration status if the individual is already registered to vote at the individual's current address;

c. Provide an explanation of the eligibility rules for registering to vote; and

d. Advise the Client that assistance with completing the form is available from the SBE or the CBE in the County where the Client resides (with phones numbers provided) and the Client's DMV Local Office.

A copy of the letter shall be maintained consistent with the relevant office's document retention polices.

B. DMV shall forward any complaints it receives made by the public regarding the provision of voter registration services by any DMV Local Office to the DMV NVRA Point Person, if complaint provides information about which Local Office was involved, and the SBE NVRA Coordinator, subject to applicable confidentiality laws.

## VIII. SBE ADDITIONAL DATA COLLECTION, ANALYSIS AND REPORTING

A. SBE Data Collection

1. The SBE NVRA Coordinator shall count by County the total numbers of Voter Registration Forms received each month that are coded for DMV (code 05).

2. This count shall include separate totals for new, changed, duplicate and Incomplete Registrations (also known as "transactions" in SEIMS).

3. The SBE NVRA Coordinator shall count the total number of coded, pre-populated voter registration mailings sent to DMV Clients following Remote Transactions by County.

B. SBE Reporting

1. The numbers in subsection VI.A above shall be included in a monthly report that the SBE shall post to its website.

2. This monthly report shall also contain the data provided to the SBE by DMV, which includes the following:

   a. In-Person Transactions:

      i. The total number of In-Person Transactions reported by DMV, organized by County, and broken down by DMV Local Office; and

      ii. The total number of In-Person Transactions reported by DMV for which a Voter Registration Form was submitted, organized by County, and broken down by DMV Local Office.

   b. Remote Transactions:

      i. The total number Remote Transactions reported by DMV conducted through the DMV's online portal; and

      ii. The total number of responses to the voter preference question reported by DMV, detailed by the type of response – "yes to voter registration," "yes to change in address" and "decline to voter registration."

   c. The following information, once it becomes available from DMV:

      i. The total number of In-Person Transactions reported by DMV where a Declination Form was signed, organized by County or broken down by DMV Local Office, if possible;

-31-

ii.   The total number of In-Person Transactions reported by the DMV where a Client reported a change of address, organized by County or broken down by DMV Local Office, if possible; and

iii.  The total number of Remote Transactions reported by DMV during which a change of address was reported.

3.   This monthly report shall also contain the ratios by County created pursuant to Section IX below.

4.   The data in the monthly report shall be provided on the SBE's website in an Excel spreadsheet format or a type-written electronic tabular format that can be easily converted to Excel.

IX.   **MONTHLY REVIEW AND ANLYSIS OF DATA BY THE SBE NVRA COORDINATOR**

A.   As to the Voter Registration Forms coded for DMV, on a monthly basis, the SBE NVRA Coordinator shall:

1.   Review the total number of Voter Registration Forms by County;

2.   Compare the total number of Voter Registration Forms to the total number of Voter Registration Forms for that County in the last three (3) months; and

3.   Compare the total number of Voter Registration Forms for that County to counties with similar numbers of In-Person and Remote Transactions.

B.   On a monthly basis, the SBE NVRA Coordinator shall also:

1.   Create a ratio for each County by dividing the total number of Voter Registration Forms coded for DMV for that County by the total number of In-Person Transactions and Remote Transactions for the County;

2.   Compare the ratio for each County to that County's previous ratios; and

3.   Compare the ratio to counties with similar number of In-Person and Remote Transactions.

C.   Once the data is available from DMV, the SBE NVRA Coordinator shall also, on a monthly basis:

1.   Review the number of declinations recorded during In-Person Transactions for each County;

2. Compare this number to the number of declinations recorded the month before for that County; and

3. Compare this number to counties with similar numbers of In-Person Transactions.

## X. FOLLOW UP BY THE SBE NVRA COORDINATOR

A. Semi-annually, the SBE NVRA Coordinator shall provide to each CBE the data and analysis discussed in Sections VIII & IX above for that CBE's County, and shall review the data and analysis for that County with the County's CBE. The review of the data and analysis shall include a review of any significant decreases in the number of Voter Registration Forms, significant decreases in the County's ratio of Voter Registration Forms, and a significant amount of incomplete applications.

B. If the SBE NVRA Coordinator determines, in the Coordinator's sole discretion, that

a. The total number of submitted Voter Registration Forms decreased significantly over time;

b. The total numbers provided by DMV and discussed in Section IX above decreased significantly over time;

c. The ratio for any County decreased significantly over time;

d. A particular County has a significantly lower ratio or total number of submitted Voter Registration Forms as compared to other Counties with similar numbers of In-Person and Remote Transactions;

e. A particular County has a significantly higher number of Incomplete Voter Registration Forms over the course of a quarter; or

f. Once the information is available, if the total number of declinations recorded during In-Person Transactions varies significantly from the month before or as compared to Counties with a similar number of In-Person Transactions

then the SBE NVRA Coordinator shall review the data and analysis with the CBE, and notify the DMV NVRA Point Person.

C. In consultation with the affected CBE and the DMV NVRA Point Person, the SBE NVRA Coordinator shall come up with a plan to investigate the existence or extent of NVRA implementation or compliance problems. If a problem is uncovered, all three (3) individuals shall use their best efforts to take steps as necessary to obtain compliance, which may include additional NVRA trainings by

-33-

the SBE NVRA Coordinator or the DMV NVRA Point Person. Either the SBE NVRA Coordinator or the DMV NVRA Point Person may, at their discretion, follow-up on the mailing process, by sending out emails reminding the responsible party of the need to send the required mailings.

D.    The SBE NVRA Coordinator shall share all data collected and all analysis done under this Agreement with the DMV NVRA Point Person, who shall review the data on a regular basis.

## XI.    PROVISIONAL BALLOT REPORTING

A.    The SBE shall modify the provisional voter table in SEIMS, into which County Boards of Elections enter the reason given by a voter for voting a provisional ballot, to include a reportable field in which the CBE shall indicate that the voter asserted on the provisional ballot that he or she attempted to register at DMV.

B.    The SBE shall work to complete and implement this provisional voter table modification by November 1, 2018.

C.    In federal elections occurring after November 1, 2018, during the term of this Agreement, the SBE shall include the reportable field indicating whether a voter asserted that they attempted to register to vote at DMV in all provisional voter tables made available to the public on the SBE website, currently at http://dl.ncsbe.gov/index.html?prefix=ENRS/.

D.    The SBE will conduct training for the CBEs explaining this change in process.

E.    Within forty-five (45) days after canvass in the federal elections held during the term of this Agreement, the Director shall report the following information concerning provisional ballots cast during the election for which the voters asserted that they attempted to register to vote at DMV on the provisional ballot application:

    1.    The total number of those provisional ballots cast in the election, by County;

    2.    The total number of those provisional ballots counted, in whole or in part, in the election, by County; and

    3.    For elections occurring after November 1, 2018, the total number of provisional ballots cast in which the voter indicated thereon that they submitted a Voter Registration Form through DMV.

F.    The Parties agree that this reporting requirement shall not obstruct or delay the canvassing or the reporting of election results.

-34-

## XII. ADDITIONAL OVERSIGHT AND MONITORING BY THE SBE NVRA COORDINATOR

A.    Once every six (6) months, the SBE NVRA Coordinator shall inquire with the DMV NVRA Point Person as to whether there are sufficient signs displayed in the DMV Local Offices addressing voter registration.

B.    If a potential compliance problem is identified by the SBE NVRA Coordinator, through review of data required under this Agreement or identified by any other means, such as by a report from the public or an inquiry from a DMV Local Office, County Board of Elections or an employee thereof, the SBE NVRA Coordinator shall notify the DMV NVRA Point Person and provide assistance, as requested, with any additional training or remedial measures.

C.    On a semi-annual basis during the term of the Agreement, starting six (6) months after the effective date of this Agreement, the SBE NVRA Coordinator shall provide Plaintiffs' counsel with a written report confirming that the Coordinator has communicated with each CBE within the last six (6) months, reviewed with each CBE the data and analysis of the CBE's County and addressed any concerns the Coordinator may have with that County's implementation of the NVRA requirements. This report shall also specifically identify how many DMV Local Offices failed the audit described in Section VII above, list the specific concerns identified by the Coordinator and describe what remedial steps were taken, including, but not limited to, whether additional trainings were conducted. DMV shall assist with the preparation of this report as requested by the SBE NVRA Coordinator. Additionally, this report may contain any updates about other trainings, other work with the DMV NVRA Point Person and other required steps identified in this Agreement as being able to be provided through these Reports.

-35-

# EXHIBIT 1 to SCHEDULE I

<u>Language for Cover Letters</u>

You are receiving this letter because you recently visited a North Carolina Division of Motor Vehicles (DMV) office or used the DMV online system.

During that session with the DMV, you may have reported a move to a different county in North Carolina or may have started the process to register to vote or update your registration. However, in order to register to vote at your current address, your signature is required on the enclosed registration application. You must also provide any missing information in the sections marked 'Required' on the enclosed voter registration application. You may also make corrections and provide other information on the form.

Only U.S. citizens are eligible to register to vote. In addition, to register to vote you must meet all of the qualifications listed at the top of the enclosed Voter Registration Application and in the signature block of the Application. If you do not meet these qualifications, do not return the enclosed application.

If you wish to be registered to vote, **please complete and sign the enclosed form confirming, under penalty of perjury, that you meet the qualifications to vote and that the information on the Application is correct.**

Return your signed form to the county elections office at the address noted above or to the North Carolina Bipartisan State Board of Elections and Ethics Enforcement at **P.O. Box 27255, Raleigh, NC 27611-7255.**

**Please contact our office at the phone number provided above if you have any questions concerning this notice.** If you want a copy of the enclosed voter registration form in Spanish access please visit https://www.ncsbe.gov/Portals/0/FilesP/NCVRRegFormv102013span.pdf or https://www.ncsbe.gov/Voter-Information/VR-Form. You can also call [insert number].

"Si desea una copia del formulario de inscripción de votante en español, por favor visite https://www.ncsbe.gov/Portals/0/FilesP/NCVRRegFormv102013span.pdf o https://www.ncsbe.gov/Voter-Information/VR-Form o también puede llamar al [insert number]."

Case 1:15-cv-01063-LCB-JEP   Document 175-2   Filed 06/25/18   Page 46 of 93

# Schedule II

## SCHEDULE II – NVRA SECTION 7 COMPLIANCE

### I.    DEFINITIONS

The following definitions apply for the limited purposes of this Agreement only and for no other purpose unrelated to this Agreement. Neither Plaintiffs nor Defendants admit or agree that these definitions constitute full, complete or accurate statements of applicable law under the National Voter Registration Act of 1993 ("NVRA"), its regulations or other law. Defendants reserve all of their legal and equitable rights under the NVRA and any other applicable law, notwithstanding this Agreement.

As used herein for purposes of Schedule II only:

A.    "Agreement" shall refer to this Settlement Agreement, including the Common Terms and Section II – NVRA Section 7 Compliance.

B.    "Covered Transaction" means any transaction identified in Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(A), i.e., applications, recertifications, renewals and changes of address. These shall include transactions conducted with respect to the SNAP program, described in North Carolina as the "FNS" program, the TANF program, described in North Carolina as the "Work First" program, the CHIP program, described in North Carolina as the "Health Choice" program, Medicaid and WIC.

C.    "Days" means calendar days. If an action must take place within a certain number of days and the deadline would fall on a weekend or holiday, it is sufficient to take the required action on the first business day after the weekend or holiday.

D.    "DHHS" means the North Carolina Department of Health and Human Services, and includes, without limitation, its authorized agents, officers and employees.

E.    "Director" means the Executive Director of the SBE acting as the Chief Election Official for North Carolina.

F.    "County DSS Office" means any county Department of Social Services office within the state of North Carolina that provides Public Assistance Benefits as defined herein through Covered Transactions, including County DSS Office employees and agents. This shall include any such county office even if its formal name does not include the term "Department of Social Services."

G.    "Local WIC Agency" shall mean any local office providing Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC") services within the State of North Carolina that provides WIC Program Benefits as defined herein through Covered Transactions, including the employees and agents of those offices. This shall include any such office even if its formal name does not include

the term "WIC."  There are currently eighty-five (85) such local WIC offices in North Carolina. There is not a WIC Office in every North Carolina county.

H.      "In-Person Transaction" means a Covered Transaction that takes place at a County DSS Office or Local WIC Agency.

I.      "County Board(s) of Election" or "CBE" means all county boards of elections, including the officers, agents, employees and representatives of the same.

J.      "Laminated Form" means a laminated form containing the Voter Preference Question and the statutory disclosures required by 52 U.S.C. § 20506(a)(6)(B) for use at County DSS Offices during In-Person Transactions.

K.      "NVRA" means the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.*

L.      "Public Assistance Benefits" means those benefits that are subject to Section 7 of the NVRA which are administered by DHHS, including, but not limited to: the Supplemental Nutrition Assistance Program (SNAP, formerly the food-stamp program), the Special Supplemental Nutrition Program for Women, Infants and Children (WIC), the Temporary Assistance for Needy Families (TANF) program (formerly the Aid to Families with Dependent Children or AFDC program), the Medicaid program and the State Children's Health Insurance Program (CHIP).

M.      "Public Assistance Client" or "Client" means each person who engaged in a Section 7 Covered Transaction, or who will do so in the future.

N.      "Remote Transaction" means any interaction wherein a Client applies for Public Assistance Benefits, renews or recertifies Public Assistance Benefits or submits a change of address for Public Assistance Benefits via the telephone, facsimile, mail or electronically.

O.      "Ex Parte Medicaid Renewal" shall mean the renewals of Medicaid benefits that are conducted through an automatic review of Clients' eligibility and communicated to Clients through a confirmation letter.

P.      "SBE" shall mean the North Carolina State Board of Elections, which is now known as the North Carolina Bipartisan State Board of Election and Ethics Enforcement, and any officials, employees, agents, representatives, successors and assigns of the North Carolina State Board of Elections.

Q.      "SBE NVRA Coordinator" means the person designated by the Director as described in Schedule I, Section IV to perform the duties as described herein.

R.      "Section 7" means Section 7 of the NVRA, 52 U.S.C. § 20506.

S.      "Third-Party Contractor" means any third party that contracts with DHHS in North Carolina to conduct, or assist Clients in conducting, Covered Transactions as defined herein.

T.      "Voter Preference/Notice Form" means the form required pursuant to Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(B), that includes boxes for Public Assistance applicants and Clients to check to indicate whether the applicant would like to register or decline to register to vote and/or any version of a form asking Public Assistance applicants and Clients if they would like to register to vote.

U.      "Voter Preference Question" means the following question, mandated by Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(B)(i): "If you are not registered to vote where you live now, would you like to register to vote here today?"

V.      "Voter Registration Form," "Voter Registration Application," "Coded Voter Registration Form" or "Coded Voter Registration Application" means the voter registration application form described in Section 9 of the NVRA, 52 U.S.C. § 20508(a)(2) & (b), or the equivalent North Carolina voter registration application form that is coded by the SBE to reflect that it was provided by a Local WIC Agency or County DSS Office.

## II.    DISTRIBUTION OF VOTER PREFERENCE FORM AND VOTER REGISTRATION FORM TO PUBLIC ASSISTANCE CLIENTS

A.      NC FAST will be modified as outlined herein (changes to NC FAST and ePASS). The Parties agree and acknowledge that changes to computer systems, including the programming necessary to make, test and implement the changes, will require substantial technical effort and adequate time to complete correctly. DHHS agrees to use its best efforts to support and implement these modifications as soon as practicable. The Parties understand and acknowledge that NC FAST has estimated that it will take no less than four (4) months, from the DHHS request date, for the changes to be fully implemented. The Parties agree that these modifications will be completed within eight (8) months from the Execution of this Agreement.

B.      Counsel for and/or staff from DHHS will provide Plaintiffs' counsel with updates about the progress of implementation of the modifications to NC FAST (and details about any problems or delay that might impact compliance with the eight (8)-month deadline) every two (2) months until such time as the modifications are fully completed or Plaintiffs' counsel agrees that the updates are no longer needed. These updates can be provided through telephone conferences scheduled at a time mutually agreeable to all or through written progress reports provided every two (2) months from Execution of this Agreement until such time as the modifications are fully completed or Plaintiffs' counsel agrees that they are no longer needed.

-41-

C.   In-Person Covered Transactions Taking Place at County DSS Offices Using NC FAST.

   1.   Laminated Form for use by County DSS Office caseworkers:

   The Parties have agreed to the format of a Laminated Form for use by County DSS Office caseworkers that will include the Voter Preference Question and all statutory disclosures required by Section 7, 52 U.S.C. § 20506(a)(6)(B). The SBE shall provide copies of the Laminated Form to the County DSS Offices with instructions on its use consistent with the terms of this Agreement.

   2.   The following modifications will be made in NC FAST:

      a.   The NC FAST screen shall display to the caseworker the following disclosures pursuant to Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(B):

      *"If you are not registered to vote where you live now, would you like to apply to register to vote here today? [Please select / Yes / No boxes].*

      *IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME."*

      b.   The response to the Voter Preference Question in NC FAST shall offer three (3) potential responses in a dropdown menu: "Please Select," "Yes" and "No."

      c.   The NC FAST screen shall give the following instructions to the caseworker on the same screen with, or in close proximity to, the Voter Preference Question:

         1.   Give every Client a Voter Registration Form automatically, without regard to her response to the Voter Preference Question.

         2.   Give every Client the Laminated Form for review.

         3.   Allow the Client time to read the Laminated Form.

         4.   Ask the Voter Preference Question and record the answer into NC FAST. No response shall be entered for any Client who fails to answer the question.

-42-

3. The summary of the benefits application that NC FAST generates for the Client at the end of the transaction, during an In-Person Transaction, will be revised as follows:

   a. The summary document will show the Client's response to the Voter Preference Question prominently in a black outlined box and/or in bold font with the heading "Voter Registration."

   b. The Client's response shall be displayed as either "Yes" or "No," as appropriate, based upon the Client's response during the interview. However, if the Client did not answer the question, the summary document will show the Client's response as "Declined to Answer."

   c. The box displaying the Client's response to the Voter Preference Question shall appear in the summary document immediately before or above the space for the Client's signature.

4. With the assistance of DHHS as necessary, the SBE NVRA Coordinator shall train County DSS Offices that their caseworkers must complete the following steps, which are required under the terms of this Agreement:

   a. To direct each Client to review the NC FAST Laminated Form;

   b. To ask each Client the Voter Preference Question and record the answer, or leave as default to "Please Select" if the Client refuses to answer;

   c. To give every Client a Voter Registration Form automatically, without regard to his/her response to the Voter Preference Question;

   d. To offer to assist the Client in completing the Voter Registration Form if the Client answers "yes" to the Voter Preference Question; and

   e. If the Client completes a Voter Registration Form, to review it for completeness of all mandatory fields necessary to register to vote, including name, date, date of birth, address(es), identification number, eligibility confirmation and Client signature.

D. Covered Transactions Taking Place via ePASS

1. The following modifications will be made in ePASS:

   a. The ePASS screen shown to the Client that contains the Voter Preference Question shall also contain, on that screen or in close

-43-

proximity to that screen, (1) all the NVRA disclosures required under 52 U.S.C. § 20506(a)(6)(B) and (2) a statement that the Client can obtain assistance with voter registration by calling 1-866-522-4723. The ePASS screen or screens shall include the following text or substantially similar text:

*"Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.*

*If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private.*

*If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote or your right to choose your own political party or other political preference, you may file a complaint with the North Carolina Bipartisan State Board of Elections and Ethics Enforcement.*

*If you require assistance with voter registration, you can call the North Carolina Bipartisan State Board of Elections and Ethics Enforcement at 1-866-522-4723.*

*If you are not registered to vote where you live now, would you like to apply to register to vote here today? [Please select / Yes / No boxes].*

*IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME."*

b.    The response to the ePASS Voter Preference Question shall offer three potential responses in a dropdown menu: "Please Select," "Yes" and "No." The default setting shall be "Please Select."

c.    Immediately after an application for services is submitted via ePASS and the Client's identification number associated with his/her benefits application is displayed, another screen shall be displayed. This screen will be presented to Clients who selected "Yes," "No" or declined to respond in response to the Voter Preference Question. The screen shall include the following text or text that is substantially similar:

-44-

*"Voter Registration Information: If you responded that you would like to register to vote at this time, your County DSS Office will mail you a Voter Registration Application to the address we have on file for you to complete and return. You may return your completed Voter Registration Application to either the North Carolina Bipartisan State Board of Elections and Ethics Enforcement (the address is found on the back of the Voter Registration Application) or to your local county DSS public assistance office.*

*If you prefer to also print the Voter Registration Application from your personal printer using your web browser, Voter Registration Applications are available at the following link at the website of the North Carolina Bipartisan State Board of Elections and Ethics Enforcement (http://www.ncsbe.gov/Portals/0/NVRA/Forms/v092016%20_English_01_NVRA.pdf). Also, the ePASS start page includes a link to the Voter Registration Application.*

*If you need assistance, please call the North Carolina Bipartisan State Board of Elections and Ethics Enforcement at 1-866-522-4723."*

2.      ePASS on its home or start page shall provide a link to the downloadable Voter Registration Form, coded for Public Assistance Clients.

3.      ePASS on its home or start page shall provide a link to the downloadable Spanish language Voter Registration Form, coded for Public Assistance Clients, with a sentence in Spanish alerting Clients to this Option.

4.      The SBE shall provide DHHS with links to the downloadable Voter Registration Forms in English and Spanish, coded for Public Assistance Clients.

5.      The SBE NVRA Coordinator shall train County DSS Offices that their caseworkers must mail a Voter Registration Form and DSS Cover Letter, as described herein, to all Clients using ePASS for a Covered Transaction if the Client has: (a) indicated that he/she wants to register to vote in ePASS; or (b) failed to answer the Voter Preference Question in ePASS.

E.      DSS Cover Letter

1.      The SBE NVRA Coordinator shall provide County DSS Offices with Coded Voter Registration Forms and a Cover Letter to be used for these mailings. The DSS Cover Letter shall:

-45-

a. Explain why the Client is receiving the Voter Registration Form, i.e., as a result of their recent interaction with a County DSS Office (this may be a general statement; specific offices do not need to be named), and the National Voter Registration Act requires the County DSS Office to provide the Client with an opportunity to register to vote;

b. Explain that completed Voter Registration Forms can be sent directly to the SBE at the address provided on the back of the Voter Registration Form or can be returned to the applicant's local County DSS Office; and

c. Provide a statement that the Client can obtain assistance with voter registration by calling 1-866-522-4723.

i. The SBE will train the receptionist who answers this number to direct any questions about voter registration to staff specifically involved with voter registration.

2. The DSS Cover Letter may be drafted (and signed by the SBE) with general language so that the same DSS Cover Letter can be used statewide. The SBE may at some point in the future combine the DSS Cover Letter into the Voter Registration Form itself.

3. A copy of any proposed DSS Cover Letter or proposed changes to the state Voter Registration Form to make the DSS Cover Letter language part of the Voter Registration Form shall be submitted to Plaintiffs' counsel fifteen (15) days before being finalized and Defendants agree to consider any recommendations provided by Plaintiffs' counsel within those fifteen (15) days.

F. Voter Registration Forms used during Covered Transactions shall continue to be coded by the SBE for use during Covered Transactions included in this Agreement: SNAP (FNS), Medicaid, Health Choice, WIC and Work First. Separate codes are not needed; one code for all the programs included in this Agreement is sufficient.

G. Covered Transactions Conducted in Local WIC Agencies

1. The SBE NVRA Coordinator will train state and local WIC staff that they are required to:

a. Provide a blank Coded Voter Registration Form and Voter Preference Form to all Clients during all Covered Transactions at the same time the voter registration question is displayed in Crossroads;

-46-

b.     Give each Client time to read the disclosures on the Voter Preference Form before he/she answers the Voter Preference Question;

c.     Ask the Client the Voter Preference Question and record the answer in Crossroads as follows:

1.     Record a "Yes" response by selecting "Form was Provided."

2.     Record a "No" response or a failure to respond by selecting "Declined."

3.     If the Client responds that he/she is not eligible to register to vote, record this response as "Ineligible."

4.     If the Client responds that he/she is already registered to vote, then record this response as "Registered";

d.     Ask the Client to fill out the paper Voter Preference Form. A prepopulated form may be used where available;

e.     Offer to assist the Client in completing the Voter Registration Form if the Client answers "yes" to the Voter Preference Question;

f.     Retain the Voter Preference Forms as part of the WIC Program's document retention system for Voter Preference Forms; and

g.     Review the Voter Registration Form, if the Client completed one, for completeness of all mandatory fields necessary to register to vote, including name, date, date of birth, address(es), identification number, eligibility confirmation and Client signature.

H.     Changes of Address

The SBE NVRA Coordinator shall train County DSS Offices that their caseworkers are required to send, by U.S. Postal Service mail, a Coded Voter Registration Form and a DSS Cover Letter as described herein to each Client that reports a change of address through a remote transaction, regardless of the method by which the address change is conducted, i.e. by telephone, fax, email or Internet.

The SBE NVRA Coordinator shall train County DSS Offices that their caseworkers are required, when a change of address is reported as part of an In-Person Transaction, separately from any other Covered Transactions, to provide the Client with a Coded Voter Registration Form, show the Client the

-47-

Laminated Form described herein and offer the Client assistance in completing the Voter Registration Form.

I.      Telephone Covered Transactions

The SBE NVRA Coordinator shall train County DSS Offices that their caseworkers must mail the DSS Cover Letter described herein and a Coded Voter Registration Form to any Client conducting a Covered Transaction by telephone that is a stand-alone transaction (i.e., a transaction that does not serve as a follow-up to an ePASS or In-Person Transaction for application or renewal).

J.      Other NC FAST Changes

A checkbox (or drop-down box) shall be added in NC FAST to the county DSS caseworkers' evidence queue. This drop-down box will allow the DSS caseworker to select one of two (2) options documenting their completion of voter registration responsibilities (in the following text or substantially similar wording): "voter registration provided to/handed to Client" or "voter registration mailed to Client." This will be a non-mandatory drop-down box (or field) to assist the county DSS caseworkers' workflow. The SBE NVRA Coordinator, with the assistance of DHHS, as is necessary, will train County DSS Offices that their caseworkers should use the checkbox/drop-down box in the evidence queue to confirm that they either provided a paper Voter Registration Form during an In-Person Transaction (i.e., as part of the summary page generated by NC FAST near the end of a completed application during an In-Person Transaction) or mailed the required Voter Registration Form to the Clients following a transaction in which a mailing is required under this Agreement.

K.      Paper Applications

DHHS will review the existing paper forms that are made available for Clients to apply for Public Assistance Benefits or to apply for renewal of such benefits or to report a change of address. DHHS will, in consideration with the existing page and spacing constraints of each form, and subject to any approval that may be needed from federal regulators, including the United States Department of Agriculture, with the requirement that any text regarding registration be large enough to be legible by Clients, update any such forms to include, in the same location or in close proximity: (1) the Voter Preference Question; and (2) the disclosures required by 52 U.S.C. § 20506(a)(6)(B), including the notice that assistance is available through a toll-free telephone number. DHHS may exhaust its current supply of paper forms and implement this requirement on the first occasion after execution of this Agreement that DHHS would otherwise update or reprint such paper forms.

L.      Supplies

-48-

The SBE NVRA Coordinator will provide adequate supplies of properly Coded Voter Registration Forms to all Local WIC Agencies and County DSS Offices, including coded Spanish language Voter Registration Forms.

The SBE NVRA Coordinator will also create and provide to County DSS Offices adequate supplies of the Laminated Form and the DSS Cover Letter (until such time as the cover letter information is included as part of the Voter Registration Form).

The SBE will also create, in consultation with WIC staff as appropriate, and provide to the Local WIC Agencies a quick reference guide on how to record a Client's response to the Voter Preference Question in Crossroads.

The SBE NVRA Coordinator may provide the Local WIC Agencies and County DSS Offices with these documents by printing them and distributing them to the Offices, by making them available electronically for printing by the Offices or by both methods. If an Office requests printed documents from the SBE, the SBE shall supply printed documents to that Office.

M.   Physical Offices

The SBE NVRA Coordinator will provide all Local WIC Agencies and County DSS Offices with signs and posters that indicate voter registration is available, and train the Local WIC Agencies and County DSS Offices to display the signs and posters.

## III.   THIRD-PARTY CONTRACTORS

A.   In the event that DHHS enters into a new agreement with a Third-Party Contractor to provide assistance to Clients for Covered Transactions under SNAP, Medicaid, Health Choice, TANF or WIC, DHHS shall include in such agreements provisions that require the Third-Party Contractor to comply fully with Section 7, and to notify the SBE NVRA Coordinator of the agreement. The Parties agree that existing contracts between DHHS and Second Harvest Food Bank, and between DHHS and Manna Food Bank, do not constitute Third-Party Contracts under this Agreement.

B.   After notification of an agreement with a Third-Party Contractor, the SBE NVRA Coordinator (in consultation with DHHS as necessary) shall provide to the Third-Party Contractor the same training, oversight and assistance regarding NVRA implementation that it would if the Third-Party Contractor was a Local WIC Agency or County DSS Office.

C.   For any agreements with Third-Party Contractors already in place at the time this Agreement is executed under which a Third-Party Contractor is providing assistance with Covered Transactions, the SBE NVRA Coordinator will provide the Third-Party Contractors training about NVRA implementation, particularly as

-49-

to any changes and upgrades required under this Agreement, and provide the same oversight and assistance regarding NVRA implementation that it would if the Third-Party Contractor was a Local WIC Agency or County DSS Office.

## IV. ASSISTANCE

The SBE NVRA Coordinator will train Local WIC Agencies and County DSS Offices that their caseworkers or employees who have contact with Clients during a Covered Transaction, either in-person or by remote methods, are required to offer voter registration assistance to the Client and to provide such assistance to Clients who do not decline such offer. The SBE NVRA Coordinator will train that assistance to Clients consists of helping to complete voter registration materials, including completion of the following fields: name, date, date of birth, address(es), identification number, eligibility confirmation (including specifically highlighting what those requirements are, such as that you must be a U.S. citizen to register to vote) and Client signature.

## V. TRAINING

A. The SBE NVRA Coordinator, in consultation with DHHS as may be necessary, will conduct trainings for all Local WIC Agencies and County DSS Offices about this Agreement, including, but not limited to, trainings related to agreed-upon changes to NC FAST, the required changes in the practices of Local WIC Agencies and County DSS Offices regarding sending out Cover Letters and Coded Voter Registration Forms after ePASS transactions and recording Client responses in Crossroads. This training will also include instructions to Local WIC Agencies and County DSS Offices that they must transmit completed Voter Registration Forms to their County Board of Elections consistent with the time frames required by North Carolina law and the NVRA.

B. The SBE NVRA Coordinator shall notify Plaintiffs' counsel in writing when new training materials are developed for Local WIC Agencies and County DSS Offices about the changes in practices as a result of this Agreement, and will subsequently notify Plaintiffs' counsel in writing once all the trainings for Local WIC Agencies and County DSS Offices are completed. Upon request from Plaintiffs' counsel, a copy of these training materials shall be provided once they are completed. This notice shall be provided to Plaintiffs' counsel within thirty (30) days of when the training materials have been completed, and Plaintiffs' counsel shall be notified within sixty (60) days when all the actual training sessions for Local WIC Agencies and County DSS Offices are completed. Two (2) e-mails are sufficient notification.

C. Upon request by the Defendants, Plaintiffs will provide materials that they possess that may assist in the development of any training materials. Defendants agree to consider those suggestions in good faith.

-50-

D.	The SBE NVRA Coordinator (in consultation with DHHS as necessary) will provide NVRA refresher trainings to all Local WIC Agencies and County DSS Offices once every year. The SBE NVRA Coordinator will require training attendees to affirm their attendance by signing a logbook or electronic log, as to be determined by the SBE NVRA Coordinator, so that a list of attendees is available when the SBE NVRA Coordinator conducts any follow-up as necessary under the monitoring and oversight provisions of this Agreement.

E.	The SBE shall maintain the NVRA training materials and other NVRA support information in an electronic format that is easily accessible by Local and DHHS NVRA Point Persons. The SBE will design the training materials in a format permitting Local WIC Agencies and County DSS Offices to make the materials accessible to personnel engaging in Covered Transactions and to incorporate these NVRA training materials into any training they do for new hires.

F.	The SBE NVRA Coordinator will likewise provide the same training materials contemplated herein to any Third-Party Contractor providing NVRA-covered public assistance services pursuant to a contract with DHHS, a County DSS Office or Local WIC Agency or the SBE upon written notice to the SBE NVRA Coordinator of the executed contract.

## VI.	STAFFING

A.	The SBE NVRA Coordinator:

The Executive Director shall designate a staff position whose duties include being the "SBE NVRA Coordinator."

B.	The Director shall notify Plaintiffs' counsel of the identity of the SBE NVRA Coordinator within twenty (20) days of the execution of this Agreement and shall notify Plaintiffs' counsel if the identity of the SBE NVRA Coordinator changes at any point throughout the term of this Agreement. The notification of any changes in the identity of the SBE NVRA Coordinator can be provided as part of the semi-annual reports required herein.

C.	The SBE NVRA Coordinator will have the duty to coordinate and oversee implementation of the requirements of Section 7 of the NVRA and to fulfill the monitoring and oversight obligations set forth in this Agreement. The SBE NVRA Coordinator may assign tasks to staff at the SBE to assist him/her in fulfilling this duty.

D.	DHHS NVRA Point Person:

DHHS shall designate a position or positions within DHHS to act as a "DHHS NVRA Point Person" responsible for (1) assisting the Director or the SBE NVRA Coordinator in monitoring County DSS Office implementation of Section 7 in accordance with this Agreement; and (2) assisting Local WIC Agencies and

-51-

County DSS Offices and the SBE NVRA Coordinator in identifying and addressing implementation of Section 7 in accordance with this Agreement.

DHHS shall notify Plaintiffs' counsel of the identity and/or job title/position of the initial DHHS NVRA Point Person within thirty (30) days of the execution of this Agreement, and DHHS shall continue to maintain that job title/position as the DHHS NVRA Point Person throughout the term of the Agreement. Should, at any time during the term of the Agreement, DHHS elect to designate a new job title/position to act as the DHHS NVRA Point Person, Plaintiffs' counsel shall be notified of the change of designation and of the identity of the individual currently holding the new job title/position within sixty (60) days of a change.

E.    Local NVRA Point Person:

The SBE NVRA Coordinator and the DHHS NVRA Point Person shall coordinate efforts (as may be necessary) to require each Local WIC Agency and each County DSS Office to designate a "Local NVRA Point Person," who will be responsible for assisting the SBE NVRA Coordinator in monitoring implementation of Section 7 within the Local WIC Agency or County DSS Office, and for assisting the SBE NVRA Coordinator in identifying and finding solutions to any implementation problems. The SBE NVRA Coordinator shall maintain a list of these individuals throughout the term of this Agreement.

Following the execution of this Agreement, the SBE NVRA Coordinator shall notify Plaintiffs' Counsel in writing that he or she has a current complete list of all the names of the Local NVRA Point Persons. This notification can be provided as part of the semi-annual reports required at Section VII(G)(4) below.

In years two (2) and three (3) of the term of this Agreement, the SBE NVRA Coordinator shall at least once each year confirm the accuracy of this list of all the Local NVRA Point Persons, and shall notify Plaintiffs' Counsel in writing that this has been done. This notification can be provided as part of the semi-annual reports required at Section VII(G)(4) below.

## VII.    DATA COLLECTION, ANALYSIS AND REPORTING

A.    Collection of Data

1.    By DHHS through NC FAST reporting:

a.    DHHS shall collect, by County and month, the total number of Covered Transactions, as follows: the total number of Medicaid applications, the total number of Medicaid renewals, the total number of FNS applications, the total number of FNS renewals, the total number of initial applications for Work First (TANF) and the total number of renewals/recertifications for Work First (TANF). The Parties understand that DHHS is not agreeing to

-52-

provide a breakdown of these totals that distinguishes between NC FAST In-Person Transactions and ePASS Remote Transactions at this time. Unless this changes, these Covered Transaction numbers shall be the aggregate of the In-Person Transactions through NC FAST and the Remote Transactions through ePASS, along with any other Covered Transactions tracked and recorded in NC FAST. The Parties understand that DHHS will report these numbers by County but will not report these numbers by individual County DSS Office within a County. DHHS agrees to use its best efforts to report separate totals for individual offices in the event that the NC FAST system is modified in the future to allow for such reporting.

b.      For all covered transactions processed through NC FAST and ePASS, DHHS shall collect the totals of the responses to the voter registration question broken down by "yes," "no" and "please select" (no answer provided). The Parties understand that DHHS is not agreeing to provide a breakdown of this total that distinguishes between NC FAST In-Person Transactions and ePASS transactions at this time. One total number will be reported for each response of "yes," "no" and "please select" for each County for each month for each type of benefits transaction for each program. This will include the total number of initial applications for SNAP, the total number of recertifications for SNAP, the total number of initial applications for Medicaid (which includes numbers of Health Choice), the total number of renewals/recertification for Medicaid, the total number of initial applications for Work First (TANF) and the total number of renewals/recertifications for Work First (TANF).

c.      DHHS agrees to use its best efforts to report separate totals for NC FAST In-Person Transactions and ePASS Remote Transactions in the event that the NC FAST system is modified in the future to allow for such reporting.

d.      For all Covered Transactions processed through NC FAST and ePASS, DHHS shall collect the total responses in DSS caseworkers' evidence queue about distribution of the Voter Registration Form, broken down between "voter registration provided to/handed to Client" and "voter registration mailed to Client" (or substantially similar language).

e.      All of the data described in this subsection pertaining to NC FAST will be grouped by County.

2.      By DHHS through Crossroads reporting:

-53-

a.     For all WIC Covered Transactions processed through Crossroads, DHHS shall collect the totals of the responses to the voter registration question broken down into the following categories, as found in Crossroads: "Form was Provided," "Declined," "Ineligible" and "Registered."

b.     This monthly report provided by DHHS of the total responses to the voter registration question shall remain in the format that Crossroads is currently producing or remain substantially similar.

c.     The voter registration question in Crossroads shall remain a hard stop absent any changes to the Crossroads system made by the United States Department of Agriculture.

3.     By the Director through SEIMS:

a.     The Director shall count by County the number of Voter Registration Forms submitted each month for registrations that are coded for Public Assistance agencies (WIC and DSS).

b.     This count shall include separate totals for new, changes, duplicates and incomplete registrations (also known as "transactions" in the SBE's Statewide Election Information Management System (SEIMS) database).

B.     Reporting of data

1.     DHHS shall report to the SBE NVRA Coordinator in monthly reports (1) the total aggregate number of Covered Transactions by County and month processed through NC FAST and (2) the total aggregate number of Covered Transactions by Local WIC Agency Site and month processed through Crossroads. The aggregate number of Covered Transactions for Local WIC Agency Sites is reflected for each Site as the "Clinic Total" in the monthly Voter Registration Report issued by WIC using Crossroads. The Parties understand and agree that this number would not include change-of-address transactions processed through NC FAST. Change-of-address numbers are currently included in the Crossroads' data and as such will be a part of the total Covered Transaction numbers from WIC.

2.     DHHS shall report to the SBE NVRA Coordinator in monthly reports the breakdown of the total number of Covered Transactions as stated in Section VII(A)(1)(a) above.

3.     DHHS shall provide to the SBE NVRA Coordinator in monthly reports the total number of all responses to the Voter Preference Question by County and month as reported in NC FAST, and for each WIC Office and

-54-

month as reported in Crossroads. (DHHS shall provide the location of each Local WIC Agency, so the SBE NVRA Coordinator knows in which County the office is located.)

4.    DHHS shall provide to the SBE NVRA Coordinator the total number of Voter Registration Forms provided in-person and the total number of Voter Registration Forms sent in the mail as recorded in the NC FAST caseworker dashboard.

5.    On a monthly basis, the Director will post on its website a report containing:

    ○    The total number of responses to the Voter Preference Question by County as provided by DHHS, as outlined in Section VII(A)(1)(b) above;

    ○    The total number of Voter Registration Forms coded as being from Public Assistance Clients received by each County Board of Elections, broken down by County and by updates, new registrations applications, duplicates and rejected applications;

    ○    The ratios by county created pursuant to Section VII(C) below; and

    ○    The total numbers by County of the responses in DSS caseworkers' evidence queue about distribution of the Voter Registration Form, broken down between "voter registration provided to/handed to Client" and "voter registration mailed to Client" (or substantially similar language) as provided by DHHS, as outlined in Section VII(A)(1)(d) above.

The data shall be provided on the SBE's website in an Excel spreadsheet format or a type-written electronic tabular format that can be easily converted to Excel.

C.    Monthly Review and Analysis of Data by the SBE NVRA Coordinator

1.    As to the Voter Registration Forms coded for Public Assistance Agencies (WIC and DSS), on a monthly basis, the SBE NVRA Coordinator shall:

    a.    Review the total number of Voter Registration Forms submitted to each County Board of Elections;

    b.    Create a total number of Covered Transactions for each County. This shall be done by combining the total number of Covered Transactions as reported from NC FAST for that County with the total number of Covered Transactions for each Local WIC Agency Site located within that county. Attached here as Exhibit 1 and

-55-

Exhibit 2 are two (2) guidance documents showing the County in which each Local WIC Agency Site is currently located. If these Sites change during the course of this Agreement, DHHS shall assist the SBE NVRA Coordinator with updating Exhibits 1 and 2 as requested. The SBE NVRA Coordinator shall also notify Plaintiffs' counsel of any changes in Local WIC Agency Site locations in the next semi-annual report (required by Section VII(G)(4) below).

 c. Compare the total number of Voter Registration Forms submitted to the County Board of Elections to the total number of Forms submitted to that office in the last three months; and

 d. Compare the total number of Voter Registration Forms submitted to the County Board of Elections to the total number of Forms submitted in counties with similar numbers of Covered Transactions.

2. On a monthly basis, the SBE NVRA Coordinator shall also:

 a. Create a ratio for each County by dividing the total number of Voter Registration Forms coded for Public Assistance Agencies (WIC and DSS) submitted to the County Board of Elections for that County by the total aggregate number of Covered Transactions for that County, as described in Section VII(C)(1)(b) above;

 b. Compare the ratio for each County to that County's previous ratios; and

 c. Compare the ratio to Counties with similar amounts of Covered Transactions.

3. The SBE NVRA Coordinator shall also review:

 a. The total number of mailings by County DSS Offices as provided by DHHS from the NC FAST caseworker evidence queue and evaluate any significant decreases in the total number of mailings in the last three (3) months, and as compared to total number of mailings sent by counties with similar numbers of Covered Transactions.

 b. The responses to the Voter Preference Question as provided by DHHS from NC FAST and Crossroads, and evaluate any significant changes in the numbers of the responses to the Voter Preference Question in the last three (3) months, and as compared to responses in Counties with similar numbers of Covered Transactions.

-56-

D.    Follow up by the SBE NVRA Coordinator

1.    Semi-annually, the SBE NVRA Coordinator shall provide to each CBE, Local WIC Agency and County DSS Office the data and analysis discussed in this Section, Section VII, for their corresponding County, and shall review the data and analysis for their corresponding County with them. The review of the data and analysis shall include a review of any significant decreases in the number of Voter Registration Forms, significant decreases in the County's ratio, any significant changes in the number of voter registrations mailed, any significant changes in responses to the Voter Preference Question as recorded in NC FAST and Crossroads and a significant amount of incomplete Voter Registration Forms.

2.    If the SBE NVRA Coordinator determines, in his/her sole discretion, that

a.    The total number of submitted Voter Registration Forms decreased significantly over time;

b.    The ratio for any County decreased significantly over time;

c.    A particular County has a significantly lower ratio or total number of submitted Voter Registration Forms as compared to other Counties with similar amounts of Covered Transactions;

d.    There were any significant changes in the number of voter registrations mailed as reported by the caseworker dashboard in NC FAST;

e.    There were any significant changes in responses to the Voter Preference Question as recorded in NC FAST and Crossroads or;

f.    A particular County has a significantly higher number of incomplete Voter Registration Forms over the course of a quarter,

then the SBE NVRA Coordinator shall review the data and analysis with the affected CBE, with the NVRA Point Person for any affected WIC Office within that County and the affected County DSS Office and shall notify the DHHS NVRA Point Person.

In consultation with the affected CBE, the DHHS NVRA Point Person and the Local NVRA Point Person of any identified offices, the SBE NVRA Coordinator shall come up with a plan to investigate the existence or extent of NVRA implementation or compliance problems. If a problem is uncovered, all three (3) individuals shall use their best efforts to coordinate remedial action with respect to Clients known to have not received required voter registration services, and to take other potential steps as necessary, which may include additional NVRA trainings by the

-57-

SBE NVRA Coordinator for the CBE, County DSS Office(s), or WIC Office(s).

E.     The SBE shall share all data collected and all analysis done under this Agreement with the DHHS NVRA Point Person. The DHHS NVRA Point Person shall follow-up with the SBE NVRA Coordinator, as needed or as requested, and provide any assistance with follow-up with any Local WIC Agency or County DSS Office that SBE determines is useful.

F.     SBE shall educate each Local WIC Agency and County DSS Office about the data that will be collected and the analysis that will be done under this Agreement, and about reports that will be available on its website and the content of the data that will be contained in those reports. This can be done as part of the initial training for these Offices about this Agreement that is discussed herein in Section V(A), or during the first semi-annual review as per this Agreement.

G.     Additional SBE Oversight and Monitoring

       1.     The SBE NVRA Coordinator will train Local NVRA Point Persons that they must contact their County Board of Elections or the SBE NVRA Coordinator when they are low on Coded Voter Registration Forms, Laminated Forms, Local WIC Agencies quick reference guides on how to record a Client's response to the Voter Preference Question in Crossroads, DSS Cover Letters (until such time as the Cover Letter information is included as part of the Voter Registration Form) and any voter registration signage.

       2.     Once every six (6) months, the SBE NVRA Coordinator shall send an email to every Local NVRA Point Person to make sure they have sufficient signs displayed in their offices addressing voter registration.

       3.     If a potential implementation problem is identified by the SBE NVRA Coordinator, through review of data required under this Agreement or identified by any other means, such as by a report from the public or an inquiry from a Local Office, County Board of Elections or an employee thereof, the SBE NVRA Coordinator, with the cooperation of the DHHS Coordinator and the Local NVRA Point Person as appropriate, will contact the appropriate office to investigate the cause.

       4.     On a semi-annual basis during the term of the Agreement, starting six (6) months after the effective date of this Agreement, the SBE NVRA Coordinator shall provide Plaintiffs' Counsel with a written report confirming that he/she has communicated with each CBE, Local WIC Agency and County DSS Office within the last six (6) months, reviewed with them the data and analysis of their County and addressed any concerns he/she may have with that County's implementation of the NVRA requirements. Additionally, this report may contain any updates

-58-

about training, Local NVRA Point Persons, and other required steps identified in this Agreement as being able to be provided through these Reports.

## VIII.   ADDITIONAL MEASURES:

The following provisions in this Section VIII will only apply to issues that both took place after the date of dismissal and were identified after the date of dismissal.

    A.    Individual Corrective Actions

        1.    If an SBE or County Board of Elections employee, County DSS Office or Local WIC Agency employee or Third-Party Contractor determines that an identifiable Client did not receive a Voter Registration Form as required under Section 7 of the NVRA, or this Agreement, the employee shall notify the Local NVRA Point Person in the relevant office no later than five (5) business days from the date of the discovery. Medicaid *ex parte* renewals and recertifications are expressly excluded from this additional measure.

        2.    Within fourteen (14) days of receiving such notice, the SBE NVRA Coordinator shall direct the Local NVRA Point Person to send a remedial mailing to the Client and enclose a Voter Registration Form and explanatory notice. The explanatory notice shall advise the Client that (i) he/she is receiving the mailing because (s)he may not have been offered the opportunity to apply to register to vote, (ii) the mailing does not affect the individual's registration status if the individual is already registered to vote at the individual's current address, (iii) receipt of the mailing does not indicate any information about the individual's eligibility to register to vote, (iv) it provides a clear explanation of the eligibility rules for registering to vote and (v) assistance in completing the form is available from the SBE or the Client's Local WIC Agency or County DSS Office. A copy of the letter shall be maintained consistent with the relevant office's document retention polices.

    B.    DHHS shall forward any complaints it receives made by the public regarding the provision of voter registration by any Local WIC Agency or County DSS Office to the NVRA Point Person for that Local WIC Agency or County DSS Office, if known, and also forward it to the SBE NVRA Coordinator, subject to applicable confidentiality laws.

# EXHIBIT 1 to SCHEDULE II

**Mapping Supplemental by NC County –**
**WIC Agency Providing Services**

| NC County and Local WIC Agency | Site Number(s) Local WIC Agency |
|---|---|
| **Alamance County** | |
| Alamance - Burlington | 001-01 |
| **Alexander County** | |
| Alexander - Taylorsville | 002-01 |
| **Alleghany County** | |
| Appalachian District - Alleghany | 095-02 |
| **Anson County** | |
| Anson - Wadesboro | 004-01 |
| **Ashe County** | |
| Appalachian District - Ashe | 095-03 |
| **Avery County** | |
| Toe River District - Avery | 061-02 |
| **Beaufort County** | |
| Beaufort - Washington | 007-01 |
| **Bertie County** | |
| Albemarle Regional Health Services, Albemarle Regional - Bertie | 070-06 |
| **Bladen County** | |
| Bladen - Elizabethtown | 009-01 |
| **Brunswick County** | |
| Brunswick - Bolivia<br>Brunswick - Leland<br>Brunswick - Shallotte | 010-01<br>010-02<br>010-03 |

| | |
|---|---|
| **Buncombe County** | |
| Buncombe - Asheville Coxe<br>Buncombe - Asheville Leicester<br>Buncombe - MAHEC<br>Buncombe - Asheville Biltmore | 011-01<br>011-02<br>011-03<br>011-04 |
| **Burke County** | |
| Burke - Morganton | 012-01 |
| **Cabarrus County** | |
| Cabarrus Health Alliance<br>Cabarrus - Kannapolis<br>Cabarrus - Concord | 013-01<br>013-02 |
| **Caldwell County** | |
| Carteret - Morehead City | 016-01 |
| **Camden County** | |
| Albemarle Regional Health Services<br>Albemarle Regional - Camden | 070-03 |
| **Caswell County** | |
| Piedmont Health Services<br>Caswell – Yanceyville<br>Piedmont Health - Prospect Hill | 017-01<br>068-03 |
| **Catawba County** | |
| Catawba - Hickory | 018-01 |
| **Chatham County** | |
| Piedmont Health Services<br>Piedmont Health – Moncure<br>Piedmont Health - Siler City | 068-02<br>068-04 |
| **Cherokee County** | |
| Cherokee - Murphy<br>Cherokee-Andrews | 020-01<br>020-02 |
| **Chowan County** | |
| Albemarle Regional Health Services<br>Albemarle Regional - Chowan | 070-04 |
| **Clay County** | |

| | |
|---|---|
| Clay - Hayesville | 022-01 |
| **Cleveland County** | |
| Cleveland - Shelby | 023-01 |
| **Columbus County** | |
| Columbus - Whiteville<br>Columbus - Bolton<br>Columbus - Tabor City<br>Columbus - Chadbourn | 024-01<br>024-02<br>024-03<br>024-04 |
| **Craven County** | |
| Craven County Health Department<br>Craven - New Bern<br>Craven - Havelock | <br>025-01<br>025-02 |
| **Cumberland County** | |
| Cumberland - Fayetteville<br>Cumberland - Hope Mills<br>Cumberland - Spring Lake | 026-01<br>026-03<br>026-04 |
| **Currituck County** | |
| Albemarle Regional Health Services<br>Albemarle Regional - Currituck | <br>070-05 |
| **Dare County** | |
| Dare - Manteo<br>Dare -Frisco<br>Dare - Kill Devil Hills | 028-01<br>028-02<br>028-03 |
| **Davidson County** | |
| Davidson - Lexington | 029-01 |
| **Davie County** | |
| Davie - Mocksville | 030-01 |
| **Duplin County** | |
| Duplin - Kenansville<br>Duplin - Wallace<br>Duplin - Warsaw | 031-01<br>031-02<br>031-03 |

| Durham County | |
|---|---|
| Lincoln Community Health Center Durham - Fayetteville Street Durham - North Roxboro Street Durham - Main Street | 032-01 032-02 032-03 |
| **Edgecombe County** | |
| Edgecombe - Tarboro Edgecombe - Rocky Mount | 033-01 033-02 |
| **Forsyth County** | |
| Forsyth - Highland Avenue Forsyth - Kernersville Forsyth - Martin Luther King Drive Forsyth - Cleveland Avenue | 034-01 034-02 034-03 034-04 |
| **Franklin County** | |
| Franklin - Louisburg | 035-01 |
| **Gaston County** | |
| Gaston - West Hudson Boulevard Gaston - MLK Jr. Way | 036-01 036-02 |
| **Gates County** | |
| Albemarle Regional Health Services Albemarle Regional - Gates | 070-07 |
| **Graham County** | |
| Graham - Robbinsville | 038-01 |
| **Granville County** | |
| Granville Vance District GV District - Granville | 039-01 |
| **Greene County** | |
| Greene - Snow Hill | 040-01 |
| **Guilford County** | |
| Guilford - Greensboro Guilford - High Point | 041-01 041-02 |

| Halifax County | |
|---|---|
| Halifax - Roanoke Rapids<br>Halifax - Hollister<br>Halifax - Halifax | 042-01<br>042-02<br>042-03 |
| **Harnett County** | |
| Harnett - Lillington<br>Harnett - Dunn<br>Harnett - Anderson Creek | 043-01<br>043-02<br>043-03 |
| **Haywood County** | |
| Haywood - Clyde | 044-01 |
| **Henderson County** | |
| Henderson-Hendersonville | 045-01 |
| **Hertford County** | |
| Hertford - Ahoskie | 046-01 |
| **Hoke County** | |
| Hoke - Raeford | 047-01 |
| **Hyde County** | |
| Hyde - Swan Quarter | 048-01 |
| **Iredell County** | |
| Iredell - Statesville<br>Iredell - Mooresville | 049-01<br>049-02 |
| **Jackson County** | |
| Jackson - Sylva<br>Jackson - Cashiers | 050-01<br>050-02 |
| **Johnston County** | |
| Johnston - Smithfield<br>Johnston - Clayton<br>Johnston - Benson<br>CommWell Health – McGee's Crossroads | 051-01<br>051-02<br>051-03<br>101-03 |

| | |
|---|---|
| **Jones County** | |
| Jones - Trenton | 052-01 |
| **Lee County** | |
| Lee - Sanford | 053-01 |
| **Lenoir County** | |
| Lenoir - Kinston | 054-01 |
| **Lincoln County** | |
| Lincoln - Lincolnton | 055-01 |
| **Macon County** | |
| Macon - Franklin<br>Macon - Highlands<br>Macon - Nantahala | 056-01<br>056-02<br>056-03 |
| **Martin County** | |
| Martin-Tyrrell - Washington Health District<br>MTW District - Martin | 094-01 |
| **Madison County** | |
| Madison - Marshall | 057-01 |
| **McDowell County** | |
| Rutherford, Polk, McDowell District<br>RPM District - McDowell | 081-03 |
| **Mecklenburg County** | |
| Mecklenburg - Beatties Ford Road<br>Mecklenburg - Executive Center Drive<br>Mecklenburg - Billingsley Road<br>Mecklenburg - Clanton Road | 060-01<br>060-02<br>060-03<br>060-05 |
| **Mitchell County** | |
| Toe River Health District<br>Toe River District - Mitchell | 061-01 |
| **Montgomery County** | |
| Montgomery - Troy | 062-01 |
| **Moore County** | |

| | |
|---|---|
| Moore - Carthage | 063-01 |
| **Nash County** | |
| Nash - Nashville<br>Nash - Rocky Mount<br>Nash - Bailey | 064-01<br>064-02<br>064-03 |
| **New Hanover County** | |
| New Hanover - Wilmington | 065-01 |
| **Northampton County** | |
| Northampton - Jackson<br>Northampton - Gaston<br>Northampton - Woodland | 066-01<br>066-02<br>066-03 |
| **Onslow County** | |
| Onslow - Jacksonville<br>Onslow - Camp Lejeune | 067-01<br>067-02 |
| **Orange County** | |
| Piedmont Health Services<br>Piedmont Health Services - Carrboro<br>Piedmont Health - Hillsborough | 068-01<br>068-05 |
| **Pamlico County** | |
| Pamlico - Bayboro | 069-01 |
| **Pasquotank County** | |
| Albemarle Regional Health Services<br>Albemarle Regional - Pasquotank | 070-01 |
| **Pender County** | |
| Pender - Burgaw<br>Pender - Hampstead | 071-01<br>071-02 |
| **Perquimans County** | |
| Albemarle Regional Health Services<br>Albemarle Regional - Perquimans | 070-02 |
| **Person County** | |
| Person - Roxboro | 073-01 |
| **Pitt County** | |

| | |
|---|---|
| Pitt - Greenville | 074-01 |
| Pitt - Farmville | 074-02 |
| Pitt - Vidant Medical Center | 074-04 |
| **Polk County** | |
| Rutherford, Polk, McDowell District<br>RPM District - Polk | 081-02 |
| **Randolph County** | |
| Randolph – Asheboro | 076-01 |
| Randolph - Archdale | 076-02 |
| Randolph - Liberty | 076-03 |
| **Richmond County** | |
| Richmond - Rockingham | 077-01 |
| **Robeson County** | |
| Robeson - Lumberton | 078-01 |
| Robeson - Maxton | 078-02 |
| Robeson - Fairmont | 078-03 |
| Robeson - Saint Pauls | 078-04 |
| Robeson - Red Springs | 078-05 |
| Robeson - Pembroke | 078-06 |
| **Rockingham County** | |
| Rockingham - Wentworth | 079-01 |
| **Rowan County** | |
| Rowan - Salisbury | 080-01 |
| **Rutherford County** | |
| Rutherford, Polk, McDowell District<br>RPM District - Rutherford | 081-01 |
| **Sampson County** | |
| Sampson - Clinton | 082-01 |
| CommWell - Newton Grove | 101-01 |
| CommWell - Salemburg | 101-02 |
| **Scotland County** | |
| Scotland - Laurinburg | 083-01 |
| **Stanly County** | |

| | |
|---|---|
| Stanly - Albemarle | 084-01 |
| **Stokes County** | |
| Stokes - Danbury<br>Stokes - King | 085-01<br>085-02 |
| **Surry County** | |
| Surry - Dobson | 086-01 |
| **Swain County** | |
| Swain - Bryson City | 087-01 |
| **Transylvania County** | |
| Transylvania - Brevard | 088-01 |
| **Tyrrell County** | |
| Martin-Tyrrell - Washington Health District | 094-02 |
| **Union County** | |
| Union - Monroe | 090-01 |
| **Vance County** | |
| Granville Vance District - GV District – Vance | 039-02 |
| **Wake County** | |
| Wake - Sunnybrook<br>Wake - Millbrook Road<br>Wake - Zebulon<br>Wake - Wake Forest<br>Wake - Fuquay Varina | 092-01<br>092-02<br>092-03<br>092-04<br>092-05 |
| **093 - Warren County** | |
| Warren - Warrenton | 093-01 |
| **Washington County** | |
| Martin-Tyrrell - Washington Health District | 094-03 |
| **Watauga County** | |
| Appalachian District - Watauga | 095-01 |

| | |
|---|---|
| **Wayne County** | |
| Wayne - Goldsboro | 096-01 |
| Wayne - Seymour Johnson | 096-02 |
| Wayne - Mount Olive | 096-03 |
| **Wilkes County** | |
| Wilkes - Wilkesboro | 097-01 |
| **Wilson County** | |
| Wilson - Wilson | 098-01 |
| **Yadkin County** | |
| Yadkin - Yadkinville | 099-01 |
| **Yancey County** | |
| Toe River Health District - Yancey | 061-03 |

# EXHIBIT 2 to SCHEDULE II

**North Carolina WIC Program**
**County Mapping Supplemental**

| WIC Agency Providing Services | NC County *(If Needed)* |
|---|---|
| **001 - Alamance County** | |
| 001-01 - Alamance - Burlington | |
| **002 - Alexander County** | |
| 002-01 - Alexander - Taylorsville | |
| **004 - Anson County** | |
| 004-01 - Anson - Wadesboro | |
| **007 - Beaufort County** | |
| 007-01 - Beaufort - Washington | |
| **009 - Bladen County** | |
| 009-01 - Bladen - Elizabethtown | |
| **010 - Brunswick County** | |
| 010-01 - Brunswick - Bolivia<br>010-02 - Brunswick - Leland<br>010-03 - Brunswick - Shallotte | |
| **011 - Buncombe County** | |
| 011-01 - Buncombe - Asheville  Coxe<br>011-02 - Buncombe - Asheville  Leicester<br>011-03 - Buncombe - MAHEC<br>011-04 - Buncombe - Asheville  Biltmore | |
| **012 - Burke County** | |
| 012-01 - Burke - Morganton | |
| **013 - Cabarrus Health Alliance** | |
| 013-01 - Cabarrus - Kannapolis<br>013-02 - Cabarrus - Concord | Cabarrus County<br>Cabarrus County |
| **014 - Caldwell County** | |
| 016-01 - Carteret - Morehead City | |

| | |
|---|---|
| **017 - Caswell County** | |
| 017-01 - Caswell – Yanceyville | |
| **018 - Catawba County** | |
| 018-01 - Catawba – Hickory | |
| **020 - Cherokee County** | |
| 020-01 - Cherokee - Murphy<br>020-02 – Cherokee - Andrews | |
| **022 - Clay County** | |
| 022-01 - Clay – Hayesville | |
| **023 - Cleveland County** | |
| 023-01 - Cleveland – Shelby | |
| **024 - Columbus County** | |
| 024-01 - Columbus – Whiteville<br>024-02 - Columbus - Bolton<br>024-03 - Columbus - Tabor City<br>024-04 - Columbus - Chadbourn | |
| **025 - Craven County Health Department** | |
| 025-01 - Craven - New Bern<br>025-02 - Craven - Havelock | Craven County<br>Craven County |
| **026 - Cumberland County** | |
| 026-01 - Cumberland - Fayetteville<br>026-03 - Cumberland - Hope Mills<br>026-04 - Cumberland - Spring Lake | |
| **028 - Dare County** | |
| 028-01 - Dare - Manteo<br>028-02 - Dare - Frisco<br>028-03 - Dare - Kill Devil Hills | |
| **029 - Davidson County** | |
| 029-01 - Davidson – Lexington | |
| **030 - Davie County** | |
| 030-01 - Davie – Mocksville | |

| | |
|---|---|
| **031 - Duplin County** | |
| 031-01 - Duplin - Kenansville<br>031-02 - Duplin - Wallace<br>031-03 - Duplin - Warsaw | |
| **032 - Lincoln Community Health Center** | |
| 032-01 - Durham - Fayetteville Street<br>032-02 - Durham - North Roxboro Street<br>032-03 - Durham - Main Street | Durham County<br>Durham County<br>Durham County |
| **033 - Edgecombe County** | |
| 033-01 - Edgecombe – Tarboro<br>033-02 - Edgecombe - Rocky Mount | |
| **034 - Forsyth County** | |
| 034-01 - Forsyth - Highland Avenue<br>034-02 - Forsyth - Kernersville<br>034-03 - Forsyth - Martin Luther King Drive<br>034-04 - Forsyth - Cleveland Avenue | |
| **035 - Franklin County** | |
| 035-01 - Franklin – Louisburg | |
| **036 - Gaston County** | |
| 036-01 - Gaston - West Hudson Boulevard<br>036-02 - Gaston - MLK Jr. Way | |
| **038 - Graham County** | |
| 038-01 - Graham – Robbinsville | |
| **039 - Granville Vance District** | |
| 039-01 - GV District - Granville<br>039-02 - GV District - Vance | Granville County<br>Vance County |
| **040 - Greene County** | |
| 040-01 - Greene - Snow Hill | |
| **041 - Guilford County** | |
| 041-01 - Guilford - Greensboro<br>041-02 - Guilford - High Point | |
| **042 - Halifax County** | |

| | |
|---|---|
| 042-01 - Halifax - Roanoke Rapids<br>042-02 - Halifax - Hollister<br>042-03 - Halifax - Halifax | |
| **043 - Harnett County** | |
| 043-01 - Harnett - Lillington<br>043-02 - Harnett - Dunn<br>043-03 - Harnett - Anderson Creek | |
| **044 - Haywood County** | |
| 044-01 - Haywood – Clyde | |
| **045 - Henderson County** | |
| 045-01 – Henderson - Hendersonville | |
| **046 - Hertford County** | |
| 046-01 - Hertford – Ahoskie | |
| **047 - Hoke County** | |
| 047-01 - Hoke – Raeford | |
| **048 - Hyde County** | |
| 048-01 - Hyde - Swan Quarter | |
| **049 - Iredell County** | |
| 049-01 - Iredell - Statesville<br>049-02 - Iredell - Mooresville | |
| **050 - Jackson County** | |
| 050-01 - Jackson – Sylva<br>050-02 – Jackson - Cashiers | |
| **051 - Johnston County** | |
| 051-01 - Johnston - Smithfield<br>051-02 - Johnston - Clayton<br>051-03 - Johnston - Benson | |
| **052 - Jones County** | |
| 052-01 - Jones – Trenton | |
| **053 - Lee County** | |

| | |
|---|---|
| 053-01 - Lee – Sanford | |
| **054 - Lenoir County** | |
| 054-01 - Lenoir – Kinston | |
| **055 - Lincoln County** | |
| 055-01 - Lincoln – Lincolnton | |
| **056 - Macon County** | |
| 056-01 - Macon - Franklin<br>056-02 - Macon - Highlands<br>056-03 – Macon - Nantahala | |
| **057 - Madison County** | |
| 057-01 - Madison – Marshall | |
| **060 - Mecklenburg County** | |
| 060-01 - Mecklenburg - Beatties Ford Road<br>060-02 - Mecklenburg - Executive Center Drive<br>060-03 - Mecklenburg - Billingsley Road<br>060-05 - Mecklenburg - Clanton Road | |
| **061 - Toe River Health District** | |
| 061-01 - Toe River District - Mitchell<br>061-02 - Toe River District - Avery<br>061-03 - Toe River District - Yancey | Mitchell County<br>Avery County<br>Yancy County |
| **062 - Montgomery County** | |
| 062-01 - Montgomery – Troy | |
| **063 - Moore County** | |
| 063-01 - Moore – Carthage | |
| **064 - Nash County** | |
| 064-01 - Nash - Nashville<br>064-02 - Nash - Rocky Mount<br>064-03 - Nash - Bailey | |
| **065 - New Hanover County** | |
| 065-01 - New Hanover - Wilmington | |

| | |
|---|---|
| **066 - Northampton County** | |
| 066-01 - Northampton - Jackson<br>066-02 - Northampton - Gaston<br>066-03 - Northampton - Woodland | |
| **067 - Onslow County** | |
| 067-01 - Onslow - Jacksonville<br>067-02 - Onslow - Camp Lejeune | |
| **068 - Piedmont Health Services** | |
| 068-01 - Piedmont Health Services - Carrboro<br>068-02 - Piedmont Health - Moncure<br>068-03 - Piedmont Health - Prospect Hill<br>068-04 - Piedmont Health - Siler City<br>068-05 - Piedmont Health - Hillsborough | Orange County<br>Chatham County<br>Caswell County<br>Chatham County<br>Orange County |
| **069 - Pamlico County** | |
| 069-01 - Pamlico - Bayboro | |
| **070 - Albemarle Regional Health Services** | |
| 070-01 - Albemarle Regional - Pasquotank<br>070-02 - Albemarle Regional - Perquimans<br>070-03 - Albemarle Regional - Camden<br>070-04 - Albemarle Regional - Chowan<br>070-05 - Albemarle Regional - Currituck<br>070-06 - Albemarle Regional - Bertie<br>070-07 - Albemarle Regional - Gates | Pastquotank County<br>Perquimans County<br>Camden County<br>Chowan County<br>Currituck County<br>Bertie County<br>Gates County |
| **071 - Pender County** | |
| 071-01 - Pender - Burgaw<br>071-02 - Pender - Hampstead | |
| **073 - Person County** | |
| 073-01 - Person – Roxboro | |
| **074 - Pitt County** | |
| 074-01 - Pitt - Greenville<br>074-02 - Pitt - Farmville<br>074-04 - Pitt - Vidant Medical Center | |
| **076 - Randolph County** | |

| | |
|---|---|
| 076-01 - Randolph − Asheboro<br>076-02 - Randolph - Archdale<br>076-03 - Randolph - Liberty | |
| **077 - Richmond County** | |
| 077-01 - Richmond - Rockingham | |
| **78 - Robeson County** | |
| 078-01 - Robeson - Lumberton<br>078-02 - Robeson - Maxton<br>078-03 - Robeson - Fairmont<br>078-04 - Robeson - Saint Pauls<br>078-05 - Robeson - Red Springs<br>078-06 - Robeson - Pembroke | |
| **079 - Rockingham County** | |
| 079-01 - Rockingham - Wentworth | |
| **080 - Rowan County** | |
| 080-01 - Rowan − Salisbury | |
| **081 - Rutherford, Polk, McDowell District** | |
| 081-01 - RPM District - Rutherford<br>081-02 - RPM District - Polk<br>081-03 - RPM District - McDowell | Rutherford County<br>Polk County<br>McDowell County |
| **082 - Sampson County** | |
| 082-01 - Sampson − Clinton | |
| **083 - Scotland County** | |
| 083-01 - Scotland − Laurinburg | |
| **084 - Stanly County** | |
| 084-01 - Stanly − Albemarle | |
| **085 - Stokes County** | |
| 085-01 - Stokes − Danbury<br>085-02 - Stokes - King | |
| **086 - Surry County** | |
| 086-01 - Surry − Dobson | |

| | |
|---|---|
| **087 - Swain County** | |
| 087-01 - Swain - Bryson City | |
| **088 - Transylvania County** | |
| 088-01 - Translyvania – Brevard | |
| **090 - Union County** | |
| 090-01 - Union – Monroe | |
| **092 - Wake County** | |
| 092-01 - Wake – Sunnybrook<br>092-02 - Wake - Millbrook Road<br>092-03 - Wake - Zebulon<br>092-04 - Wake - Wake Forest<br>092-05 - Wake - Fuquay Varina | |
| **093 - Warren County** | |
| 093-01 - Warren – Warrenton | |
| **094 - Martin-Tyrrell-Washington Health District** | |
| 094-01 - MTW District - Martin<br>094-02 - MTW District - Tyrrell<br>094-03 - MTW District - Washington | Martin County<br>Tyrrell County<br>Washington County |
| **095 - Appalachian District** | |
| 095-01 - Appalachian District - Watauga<br>095-02 - Appalachian District - Alleghany<br>095-03 - Appalachian District - Ashe | Watauga County<br>Alleghany County<br>Ashe County |
| **096 - Wayne County** | |
| 096-01 - Wayne – Goldsboro<br>096-02 - Wayne - Seymour Johnson<br>096-03 - Wayne - Mount Olive | |
| **097 - Wilkes County** | |
| 097-01 - Wilkes - Wilkesboro | |
| **098 - Wilson County** | |
| 098-01 - Wilson – Wilson | |
| **099 - Yadkin County** | |
| 099-01 - Yadkin – Yadkinville | |

| 101 - CommWell Health | |
|---|---|
| 101-01 - CommWell - Newton Grove<br>101-02 - CommWell - Salemburg<br>101-03 - CommWell – McGee's Crossroads | Sampson County<br>Sampson County<br>Johnston County |

# Schedule III

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **ACTION NC,**<br>**DEMOCRACY NORTH CAROLINA,**<br>**NORTH CAROLINA A. PHILIP**<br>**RANDOLPH INSTITUTE,**<br>**SHERRY DENISE HOLVERSON,**<br>**ISABEL NAJERA,** and<br>**ALEXANDRIA MARIE LANE,**<br><br>Plaintiffs,<br>v.<br><br>**KIM WESTBROOK STRACH,**<br>*in her official capacity as Executive*<br>*Director of the North Carolina State Board*<br>*of Elections,*<br><br>**RICK BRAJER,**<br>*in his official capacity as Secretary of the*<br>*North Carolina Department of Health and*<br>*Human Services,*<br><br>**KELLY THOMAS,**<br>*in his official capacity as Commissioner of*<br>*the North Carolina Division of Motor*<br>*Vehicles,* and<br><br>**NICK TENNYSON,**<br>*in his official capacity as Secretary of the*<br>*North Carolina Department of*<br>*Transportation,*<br><br>Defendants. | Civil Action No. 1:15-cv-01063-LCB-JEP |

## [Proposed] Order of Dismissal

In consideration of the parties' *Joint Motion for an Order of Dismissal with*

*Prejudice*, pursuant to Fed. R. Civ. P. 41(a)(2), for good cause shown, and based on the

Settlement Agreement by and between Plaintiffs, Action NC, Democracy North Carolina, North Carolina A. Philip Randolph Institute, Sherry Denise Holverson, Isabel Najera and Alexandria Marie Lane (collectively, "Plaintiffs"), and Defendants, Kim Westbrook Strach, in her official capacity as Executive Director of the North Carolina State Board of Elections (now the North Carolina Bipartisan State Board of Elections & Ethics Enforcement), Rick Brajer, in his official capacity as Secretary of the North Carolina Department of Health and Human Services (succeeded by Mandy K. Cohen), Kelly Thomas, in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles (succeeded by Torre J. Jessup), and Nick Tennyson, in his official capacity as Secretary of the North Carolina Department of Transportation (succeeded by James Trogdon III) (collectively, "Defendants"), the Court hereby ORDERS as follows:

1.      Pursuant to the Settlement Agreement, the parties stipulate and the Court hereby orders that Defendants shall pay to Plaintiffs the amount of $490,000.00 in attorneys' fees and costs as specified in the Settlement Agreement, Section IV of the Common Terms; and further orders that said payment be tendered from Defendants to Plaintiffs within 90 days following the issuance of the Order of dismissal or as otherwise provided in the Settlement Agreement. If for any reason payment cannot be made pursuant to the Settlement Agreement, the Settlement Agreement shall be considered null and void, and either party may file a Motion with this Court to vacate this Order.

2.      Neither Plaintiffs nor Defendants shall be deemed to be the prevailing party in this civil action pursuant to 52 U.S.C. § 20510(c).

3.     The Court hereby dismisses with prejudice the Complaint (Dkt. No. 1, filed 12/15/2015), including all claims asserted by Plaintiffs against Defendants in this matter, and all claims that could have been asserted other than the claims expressly excluded from the Settlement Agreement Release, as further set forth in the Settlement Agreement, Section III. The Court also hereby vacates all pending deadlines and hearing dates in this matter.

4.     Without affecting the finality of this Order of Dismissal, the Court specifically retains exclusive and continuing jurisdiction to enforce the Settlement Agreement in accordance with its terms, for the duration of the Settlement Agreement as set forth in Section V thereof.


SO ORDERED.


BY THE COURT


_____
Loretta C. Biggs
United States District Judge

Dated: _____, 2018

dc-928179